**Ardith McPHERSON,**
**Plaintiff-Appellant,**

v.

**Walter RANKIN, Individually and In His Official Capacity As Constable, Precinct One of Harris County, TX and Harris County Texas, Defendants-Appellees.**

No. 83–2399.

United States Court of Appeals,
Fifth Circuit.

July 12, 1984.

Stefan Presser, ACLU, Houston, Tex., Annie S. Garcy, Bellaire, Tex., for plaintiff-appellant.

Billy E. Lee, Molly D. Shannon, Asst. County Attys., Houston, Tex., for defendants-appellees.

Before TATE, JOLLY, and DAVIS, Circuit Judges.

TATE, Circuit Judge:

The plaintiff, Ardith McPherson, a non-tenured deputy constable [1] formerly employed by the defendant Constable of Harris County, Texas, appeals from the grant of summary judgment against her in her 42 U.S.C. § 1983 suit against Constable Walter Rankin and Harris County, Texas. The plaintiff McPherson alleges that she was denied her rights secured by the First and Fourteenth Amendments when she was fired by the Constable for a political remark made to a coworker during a private conversation. Finding that the existence of substantial issues of material fact made summary judgment inappropriate, we vacate the judgment in favor of the defendant Walter Rankin, and remand for a full trial on the merits.

On March 30, 1981, during lunch hour, McPherson and a coworker, after hearing of an assassination attempt on President Reagan, engaged in a brief, private conversation about their opposition to the President's policies on welfare and unemployment. The plaintiff concluded the discussion with the statement: "I hope if they go for him [President Reagan] again, they get him." [2]

A deputy constable overheard this statement and reported it to Constable Rankin who summoned McPherson to his office. McPherson admitted to the Constable that she made the statement. A genuine dispute exists in the factual showing, however, over whether she also admitted that she actually intended the remark as seriously made. [3] Constable Rankin then summarily fired the plaintiff. [4]

McPherson then in June 1981 sued Constable Walter Rankin and Harris County, alleging a violation of her constitutional rights under color of state law. 42 U.S.C. § 1983. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, McPherson filed a motion for summary judgment. The defendant Constable Rankin responded and requested a dismissal, claiming that McPherson failed to state a cause of action upon which the court could grant relief. The district court considered the parties' opposing motions as cross-motions for summary judgment, and it ordered an evidentiary hearing, which was held on February 14, 1983, to determine whether the plaintiff's speech was protected under applicable First Amendment principles. Following the hearing, the district court granted summary judgment in favor of the defendant Walter Rankin; McPherson appeals.

In reviewing a district court's grant of summary judgment, we are required to

---

1. McPherson was employed as a deputy clerk whose primary responsibility was to enter civil papers into a computer. Her duties were limited to clerical jobs. She did not wear a uniform, nor was she authorized to carry a weapon or make arrests. She had no contact with the public other than occasionally answering the office telephone.

 McPherson was hired for a ninety-day probationary period. At the time she was fired, two weeks of her probationary period remained.

2. The district court's version differs slightly from McPherson's accounting of what exactly was said. McPherson testified at the summary judgment hearing that she said, "[I]f they go for him again, I hope they get him."

3. Of the four persons present in Constable Rankin's office—Constable Rankin, Chief Deputy Abercia, Captain LeVrier, and Ardith McPherson—Rankin and LeVrier claim McPherson said she meant the remark, while Abercia did not recall whether Constable Rankin asked the plaintiff whether she meant what she said. McPherson argues that she pointedly told the Constable, "I didn't mean anything by it."

4. McPherson testified that she returned the following day to try to explain what she meant to the Constable, but was denied an interview.

consider the evidence presented in the light most favorable to the party opposing the motion. *Simon v. United States*, 711 F.2d 740, 743 (5th Cir.1983). Hence, the factual recitals in the opponent's affidavit as well as hearing testimony of McPherson and her witnesses must be regarded as true for the purposes of this appeal.

■ If there is a genuine issue of material fact which would cause a dispute to reasonably be resolved in favor of the party resisting the summary judgment, the summary judgment cannot stand. *National Hygienics, Inc. v. Southern Farm Bureau Life Insurance Company*, 707 F.2d 183, 186 (5th Cir.1983). That the movant appears to the court more likely than not to prevail at trial is no reason to grant summary judgment; it is not the province of the trial court on motion for summary judgment to weigh evidence, assess its probative value or decide factual issues. *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir.1982). The standard is simply that the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ Prior to its ruling granting summary judgment in favor of the defendants, the trial court ordered a hearing so that it could "hear testimony regarding the details of this incident, the intent and motivation of those involved, and the extent to which such speech by one in plaintiff's position affects the ability of the constable's office to perform its services efficiently." In determining whether private speech by a public employee is entitled to First Amendment protection, it is important to consider the context in which it is made, relevant considerations including the "manner, time, and place in which it is delivered," and the intention of the speaker. *Bickel v. Burkhart*, 632 F.2d 1251, 1256–57 (5th Cir.1980).

In this instance, the statement was made by McPherson during the lunch hour in a conversation between McPherson and her boyfriend, a coworker. The conversation took place in a non-public computer room of the constable's workforce; only two other regular coworkers in the room were present at that time, and one of them that testified stated that she did not overhear the conversation when it took place. However, the conversation chanced to be overheard by a deputy constable, who had entered the computer room to pick up papers to take to other precincts. He immediately reported the conversation to the Constable Rankin, the defendant, precipitating the events and McPherson's discharge at issue.

At the evidentiary hearing, Ardith McPherson testified that her statement—"if they go for him again, I hope they get him"—was intended only as a verbal expression of her anger with the Reagan administration's social and economic policies. The plaintiff maintained that "it is just like if I ask my sister to pick me up somewhere and she's late and I say, 'Where is she.' and I said 'Wait till she get[s] here, I'm going to kill her.' That don't mean I'm going to kill her with a gun or knife or weapon. It is an expression of conversation." Hence, the essence of McPherson's contention is that her statement was merely a form of political hyperbole and was not intended to advocate harm to the President.

McPherson also testified that when confronted by Constable Rankin, she assured him that she "didn't mean anything by it," but was not allowed to further explain her comment to him. Constable Rankin testified that when he asked McPherson whether she meant what she said, her reply was "I sure do."

■ The issue of McPherson's intent [5] is relevant to the present inquiry because it is

5. With regard to peripheral issues: In its order of January 10, 1983, the district court stated that it was "convinced that plaintiff's comment in no way constituted a violation of either 18 U.S.C. § 2385 or 18 U.S.C. § 871(a)." Section 2385 provides for federal conviction for one who

intentionally advocates the overthrow of the government. To violate section 871(a), one must "intelligently make a statement, either written or oral, in a context and under such circumstances that a reasonable person would foresee that the statement would be interpreted

imperative that a court's characterization of speech as political expression, for purposes of First Amendment protection, be predicated upon consideration of its "content, form, and context". *See Connick v. Myers*, 461 U.S. 138, ——, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), applied in *McBee v. Jim Hogg County, Texas*, 730 F.2d 1009, 1013, (5th Cir.1984) (factors include employee's motives in voicing the expressions at issue and their context).

■ Thus, in a § 1983 suit brought by a public employee against his public employer, the "manner, time, and place" of a statement, and the "context" in which it is made, as revealed by the whole record, is relevant to the determination of whether the statement is protected speech under the First Amendment. *Id.* 461 U.S. at ——, 103 S.Ct. at 1693.

The context of the speech is especially material when private expression is involved. In *Bickel v. Burkhart*, 632 F.2d 1251, 1257 (5th Cir.1980), this court noted that when a public employee expresses himself publicly, the primary focus is on the content of his speech; however, where private expression is involved, the balancing test encompasses the manner, time and place in which it is delivered as well as the context in which the statement is made. *See Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 415 n. 4, 99 S.Ct. 693, 696 n. 4, 58 L.Ed.2d 619 (1979).

The court's task is to fully consider each of these factors in applying the *Pickering* balancing test, which compels us "to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).

Based upon the testimony evinced at this hearing, the court issued an order on April 15, 1983, in which it concluded:

> The plaintiff's comment did not disrupt the workplace in general. There was no criticism of her immediate superiors. However, the comment clearly undermined her employer's confidence in her as one of his deputies whose public comments and actions during work hours he would be deemed to have ratified. Further, plaintiff's comment in no way served the public's interest in matters of general concern. While made during the noon hour, the comment was made in the office while at least some employees, including the plaintiff, were working or as they returned to work from lunch, and loud enough to be overheard by nearby co-workers.

Offering no further reasons for its determinations,[6] the court concluded that McPherson's speech was unprotected under the *Pickering* balancing test.

■ As to the intent or motivation of the plaintiff, the trial court merely noted the

---

by persons hearing ... it as a serious expression of intention to inflict bodily harm upon or take the life of the President." *United States v. Rogers*, 488 F.2d 512, 514 n. 3 (5th Cir.1974), *rev'd on other grounds*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1, *on remand* 519 F.2d 1084 (5th Cir. 1975).

It is not necessary to prove an intention to carry out the threat under section 871(a), *id.*, 488 F.2d at 514, but is necessary to prove a "true threat." In *Watts v. United States*, 394 U.S. 705, 708, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969), the Supreme Court found that the defendant's statement "if they ever make me carry a rifle the first man I want in my sights is L.B.J." was not a true threat, but a form of political hyperbole. Watts' "only offense ... was 'a kind of very crude offensive method of stating a politi-

cal opposition to the President.'" *Id.* at 708, 83 S.Ct. at 1402.

McPherson's intent is, however, significant in the present *civil* case, as a relevant factor in the overall context of the statement.

**6.** The court ostensibly engaged in an three-step analysis derived from *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977):

1. Is the communication protected?
2. If so, did it play a substantial part in the decision to fire the plaintiff?
3. If so, would the employer have fired the employee even if the protected communication had not occurred?

**180**

discrepancy in the testimony regarding McPherson's intention in making the statement. The district court was, of course, unable to make a finding on this issue because of conflicts in the testimony on this material issue. Indeed, it is not the district court's function on a motion for summary judgment to resolve any genuine issue of material fact or make determinations as to the credibility of witnesses, but instead the court must consider the facts presented and resolve all doubts in the light most favorable to the non-moving party. *See Williams v. Shell Oil Company,* 677 F.2d 506, 509 (5th Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982).

 On a motion for summary judgment, the moving party must demonstrate that the facts underlying all relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment should be denied. Fed.R.Civ.P. 56(c). As noted above, we perceive that substantial issues of material fact existed as to the "context" in which the statement was made,[7] including whether McPherson admitted to the Constable that she seriously meant what she said rather than spoke in political hyperbole.[8]

The issues presented in this case would more properly be resolved after a trial on the merits because we find the existence of substantial issues of material fact. We, therefore, VACATE the district court's summary judgment and REMAND for a full trial on the merits.

VACATED AND REMANDED.

---

7. The court further held that McPherson's discharge was justified because her "speech-related conduct ... evidenced character traits undesirable in an employee." If the plaintiff's speech was unprotected, then, under the terms of her contract as a non-tenured employee, she was terminable at will without notice by her employer. The justification for the discharge thus enunciated is necessary only if she was discharged for the exercise of protected speech.

Should, on remand after a full factual hearing, the district court determine that the plaintiff's speech was indeed protected, the court will then have to apply the remaining factors of the test expressed in *Mt. Healthy, see* note 8, *supra.* For instance, when an employee is fired, not for the content of what he has said, but for undesir-

able character traits evidenced by the speech, he may have no claim to First Amendment protection from the discharge. *See Garza v. Rodriguez,* 559 F.2d 259, 260 (5th Cir.1977), *cert. denied,* 439 U.S. 877, 99 S.Ct. 215, 58 L.Ed.2d 191 (1978) (drunken, belligerent behavior accompanied by abusively foul language); *Megill v. Board of Regents of State of Florida,* 541 F.2d 1073, 1085 (5th Cir.1976) (false and misleading public statements, profanity, disruption of public meetings).

8. Relevant to McPherson's due process claim implicated by her complaint, is the Constable's refusal, both on the day of the incident and the following day, to allow McPherson to explain herself.