Dorothy **BRINKMEYER**,
Plaintiff-Appellant,

v.

**THRALL INDEPENDENT SCHOOL DISTRICT, et al.,**
Defendants-Appellees.

No. 85–1271.

United States Court of Appeals,
Fifth Circuit.

April 16, 1986.

———

B. Craig Deats, Austin, Tex., and Truman W. Dean, Jr., Houston, Tex., for plaintiff-appellant.

Jim Walsh, Doyal, Hairston & Walsh, Austin, Tex., for defendants-appellees.

Before THORNBERRY, POLITZ and RANDALL, Circuit Judges.

## PER CURIAM:

Dorothy Brinkmeyer appeals a summary judgment in favor of the Thrall Independent School District ("Thrall ISD"), its superintendent, and members of its Board of Education.[1] Brinkmeyer, a former teacher's aide for the Thrall ISD, alleged that the defendants' failure to renew her contract of employment for the 1983–84 academic year violated her first amendment rights. Finding that Brinkmeyer's claims were not protected under the doctrine of *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the district court granted a summary judgment of dismissal. Concluding that this case was not ripe for summary adjudication, we reverse.

## BACKGROUND

Issues surrounding the Thrall, Texas, school system, its budget, and the role of the school system's superintendent were topics of public discussion in Thrall during 1982 and 1983. The particular controversy giving rise to this litigation centered on the Thrall ISD Board of Education ("the board") and the amount of money allocated in the school system's budget. The deposition testimony indicates that board members were split into two factions. A group of five board members, the "majority members," supported Thrall ISD Superintendent James E. Pollard on budgetary matters, while a group of two board members, the "minority members," favored reductions in the school system's budget. The degree of deference to be accorded the superintendent was also disputed. Pollard and the majority members were concerned that the two minority members unduly interfered with the superintendent's administration of Thrall's school system. The minority members, on the other hand, were concerned that the board was merely a "rubber stamp" for the superintendent's decisions. The split on the Board of Education was a topic of discussion in the community, particularly in light of impending school board elections.

Shortly after a meeting in August 1982 between Pollard and the Thrall ISD faculty, board member Seggern, a member of the minority group, heard that Pollard had made remarks to the faculty which Seggern interpreted as being critical of his position on the school system's budget.[2] Apparently upset with Pollard's alleged criticism of his budget position, Seggern called Brinkmeyer to check on the validity of the rumor.[3] At his deposition, Seggern related his conversation with Brinkmeyer:

Q: After you heard [about Pollard's comment], did you contact any one besides Ms. Brinkmeyer?

A: No, I did not.

 * * * * * *

Q: She didn't call you?

A: No, sir.

---

1. Defendants Ed Carlson, Jr., Donald Kunze, Richard Frankeney, Harvey Laake, and B.C. Carter were sued as individuals and as members of the Board of Education in their official capacities. Superintendent James E. Pollard was sued in both his individual and official capacities. Board members Kenneth Seggern, Lanell Ritchey, and Steve Hubnik were sued only in their official capacities. We are informed that defendant Seggern is deceased.

2. Seggern had heard that Superintendent Pollard had told the teachers, "I have two Board members that are so tight on this budget that— Don't you ask for anything that may not be needed."

3. Plaintiff Dorothy Brinkmeyer worked as a paraprofessional teacher's aide in the Thrall ISD and had been employed on a year-to-year basis for several years in the Thrall school system.

Q: You sought her out?

A: Yes, sir.

　　*　　*　　*　　*　　*　　*

Q: Did you ask her specifically if that was the comment that was made?

A: Yes, sir.

Q: What did she respond?

A: She said yes, it was.

Q: Did she say anything further besides "Yes, it was"?

A: No, sir.

Q: What else did you say to her ...?

A: Sir, I believe that was the end of it.

Q: What else did she say to you besides "Yes, sir"?

A: Nothing. We hung up. That was the end of it.

When Seggern confronted Pollard about this remark, Pollard denied saying it.

Pollard told a faculty meeting in January 1983 that he knew "that someone has been misquoting me" and that he was "going to get" that person. Shirley Winterrowd, an ex-board member, told Pollard and board member Carlson that Brinkmeyer was the person "spreading rumors." On February 12, 1983, Pollard met with Brinkmeyer and, with her permission, taped the conversation. Pollard confronted Brinkmeyer with Winterrowd's statement and asked her whether she supported him as superintendent. Brinkmeyer replied that she had no comment. Pollard also asked Brinkmeyer whether she had ever told anyone that "Mr. Pollard, at a faculty meeting, said that the two new Board members voted against ...." Brinkmeyer again refused to comment.

At the March 8, 1983 meeting of the Board of Education, Pollard recommended that the contracts of all employees except Brinkmeyer be renewed. In his deposition, Pollard testified that he felt it would be detrimental to his deteriorating relationship with Seggern if he took a strong stand against Brinkmeyer; he therefore avoided making a firm recommendation at the March 8 meeting that Brinkmeyer should be nonrenewed. Instead, Pollard played the tape of his conversation with Brinkmeyer for the board. According to the understanding of at least some of the board members, the board decided to defer decision on Brinkmeyer's contract until after a hearing. The letter which Pollard sent Brinkmeyer was at best unclear as to the board's action at the March 8 meeting. It stated:

Your contract for 1983–84 for employment as an aide in the Thrall Independent School District was not renewed by the Board of Education at their regular meeting on March 8, 1983.

Even though no law exists mandating the right for Para-professional personnel to be granted a hearing, the motion was made and approved that you be granted a hearing at the next regular board meeting if you desire to ask for one at that time.

If a hearing is requested it will be held in closed executive session on April 12, 1983.

Believing that she had been nonrenewed, Brinkmeyer filed suit in federal district court alleging that the board's actions violated her first amendment rights. She claimed that her communication informing Seggern of Pollard's remarks was constitutionally protected.

At the board's hearing on April 12, 1983, both Brinkmeyer and the board were represented by counsel. After hearing statements from witnesses, the board voted not to renew Brinkmeyer's contract for the 1983–84 school year. The board assigned the following reasons:

The decision not to renew Mrs. Brinkmeyer's contract was based on her conduct in (1) deviating from the instructions of Mrs. Lieberum as to the migrant program; (2) misrepresenting that incident in her discussions about it with Mr. Pollard and Mrs. Lieberum; (3) denying responsibility for the deviation from Mrs. Lieberum's instructions; (4) misrepresenting remarks made by Mr. Pollard at a faculty meeting; (5) filing suit against the district, its trustees and superintendent without first making a good faith

effort to resolve her problems in a more simple, less costly fashion.

On January 27, 1984, Brinkmeyer filed a second suit in which she alleged that the board had illegally retaliated against her for filing the earlier lawsuit. The two cases were consolidated.

In granting defendants' motions for summary judgment, the district court held that neither Brinkmeyer's conversation with Seggern nor her filing of the first lawsuit constituted matters of public concern as defined in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The district court refused to consider whether Brinkmeyer's filing of the first suit was protected under the due process clause of the fourteenth amendment, holding that "[i]f there is a legitimate Fourteenth Amendment argument, it should be pled as a separate cause of action." Brinkmeyer appeals.

## ANALYSIS

The district court held that Brinkmeyer's speech, including her conversation with Seggern regarding Pollard's remarks at the faculty meeting, was not a matter of public concern. From this linchpin the district court concluded that Brinkmeyer's conversation with Seggern was not protected by the first amendment, as explicated by *Connick*. Brinkmeyer contends that the district court erred in so applying *Connick*. With particularity, Brinkmeyer contends that her expression to Seggern was constitutionally protected.

In *Connick*, the Supreme Court observed that "it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." 461 U.S. at 142, 103 S.Ct. at 1687. Moreover, the Supreme Court has noted that such protection is not lost "to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public." *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619

(1979). Reflecting, however, "the common sense realization that government offices could not function if every employment decision became a constitutional matter," *Connick*, 461 U.S. at 143, 103 S.Ct. at 1688 (footnote omitted), the Supreme Court has limited the role of the federal courts to seeking " 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* at 142, 103 S.Ct. at 1687 (*quoting Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

The Supreme Court in *Connick* devised a two-step process for analyzing public employee claims under the first amendment. A court must first determine whether the employee's speech deals with a matter of public concern or is only of personal interest. Where the speech does not touch upon a matter of public concern, "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to the employee's behavior." 461 U.S. at 147, 103 S.Ct. at 1690. Where the speech does touch upon a matter of public concern, the federal court must address the second question and determine whether the state employer was justified in discharging the employee. "[T]he State's burden in justifying a particular discharge varies depending upon the nature of the employee's expression." 461 U.S. at 150, 103 S.Ct. at 1691. A "particularized balancing," *id.*, which includes consideration of such factors as the manner, time, and place in which the speech occurs, is required. 461 U.S. at 152, 103 S.Ct. at 1692.

In the instant case, the district court concluded at the first step that Brinkmeyer's conversation with Seggern did not touch upon a matter of public concern. The Supreme Court in *Connick* noted that "[w]hether an employee's speech addresses a matter of public concern must be deter-

mined by the content, form, and context of a given statement, as revealed by the whole record." 461 U.S. at 147–48, 103 S.Ct. at 1690 (footnote omitted).

Considering the record in the light most favorable to Brinkmeyer, it cannot be held at this procedural juncture that Brinkmeyer's speech did not touch upon a matter of public concern. Seggern testified that he heard that Superintendent Pollard had discussed Seggern's vote on the budget at the faculty meeting; indeed, Seggern testified at his deposition that Pollard's opinion that the two board members were "tight" had become a topic of public discussion in the Thrall community. Concerned about his own working relationship with the superintendent and what he felt to be criticism of his position on the school system's budget, Seggern testified that he called Brinkmeyer to verify the statement. Seggern's testimony indicates that his conversation with Brinkmeyer related to both school budgetary matters and the interrelationship between the Board of Education and its appointed superintendent. Both issues relate to matters of public concern. *Cf. Neubauer v. City of McAllen*, 766 F.2d 1567 (5th Cir.1985) (statement to grand jury investigating matter that body was properly investigating is, absent unusual circumstances, matter of public concern); *McKinley v. City of Eloy*, 705 F.2d 1110, 1115 (9th Cir.1983) ("the way in which an elected official or his appointed surrogates deal with diverse and sometimes opposing viewpoints from within government is an important attribute of public service about which the members of society are entitled to know.").

Further, the political context of the situation is an important factor. *Connick.* In the instant case, the conversation between Seggern and Brinkmeyer appears to have arisen out of a hotly contested dispute among elected officials and the school system's superintendent. In the face of an upcoming election, the working relationship between the board members and Superintendent Pollard had become a subject of local political debate, and Brinkmeyer's conversation with Seggern concerned that relationship.

We emphasize the procedural juncture of the instant case. Reading the record in the light most favorable to the party opposing summary judgment, we must conclude that the district court erred in granting summary judgment on the issue of whether the speech reached an issue of public concern. *See McPherson v. Rankin*, 736 F.2d 175 (5th Cir.1984) (summary judgment inappropriate since motives and context were relevant to a determination of the protected status of the speech), *after remand*, 786 F.2d 1233 (5th Cir.1986).[4]

Brinkmeyer also challenges the district court's holding that her cause of action based on the board's alleged retaliation against her for filing her first action was not constitutionally protected. We have recognized that the right of access to courts is protected by both the first amendment right to petition and the due process clause of the fourteenth amendment. *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983).

In the instant case, the district court held that Brinkmeyer's right of access to the courts under the first amendment was barred by *Connick.* The district court's conclusion, however, appears based in part on its holding that the speech Brinkmeyer sought to protect in her initial action was not of public concern. On remand, the

---

**4.** We recognize, of course, that the determination whether the speech touches on a matter of public concern is ultimately one for the court to decide. *Connick*, 461 U.S. at 148 n. 7 and 150 n. 10, 103 S.Ct. at 1690 n. 7 and 1962 n. 10; *see also Gonzalez v. Benavides*, 774 F.2d 1295 (5th Cir.1985), *cert. pending* (undertaking to review independently whether the speech at issue dealt with a matter of public concern); *Davis v. West Community Hosp.*, 755 F.2d 455 (5th Cir.1985) (same). *But see* Parker, *The Constitutional Status of Public Employee Speech: A Question for the Jury*, 65 B.U.L.Rev. 483 (1985); Higginbotham, *Continuing the Dialogue: Civil Juries and the Allocation of Judicial Power*, 56 Tex.L. Rev. 47 (1977).

district court should reconsider its holding in light of this court's opinion. *Cf. Day v. South Park Independent School District,* 768 F.2d 696, 702 (5th Cir.1985) (grievance only on an issue of private concern; cases protecting right of access to courts reflect an "admixture of the right to petition and the right to speak on matters of public concern"); *Altman v. Hurst,* 734 F.2d 1240, 1244 & n. 10 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984) (plaintiff's cause of action based on employer's retaliation for plaintiff urging co-employee to appeal her suspension barred by *Connick:* "a private office dispute cannot be constitutionalized merely by filing a legal action"); *Renfroe v. Kirkpatrick,* 722 F.2d 714 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 98, 83 L.Ed.2d 44 (1984) (grievance not protected by first amendment where not involving matter of public concern).

In addition, the district court refused to entertain any argument regarding authority for the claimed right of access to the courts, independent of the first amendment's free speech clause, holding that Brinkmeyer had not raised that claim in her pleadings. However, it is well established that a complaint is sufficient if it pleads facts upon which relief can be granted upon any legally sustainable basis. *Rathborne v. Rathborne,* 683 F.2d 914 (5th Cir.1982). On remand, the district court should consider whether the facts as alleged sufficiently raised Brinkmeyer's fourteenth amendment claim. *See McKay v. Hammock,* 730 F.2d 1367 (10th Cir.1984) (en banc).

In sum, we find that "[t]he issues presented in this case would more properly be resolved after a trial on the merits because we find the existence of substantial issues of material fact." *McPherson,* 736 F.2d at 180.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.