George **PITTS, as Father and
Next Friend of Gregory
Pitts, Plaintiff,**

v.

**AMERICAN NATIONAL INSURANCE
COMPANY, Defendant.**

**No. 2:92–cv–227PS.**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Nov. 1, 1993.

Lawrence E. Abernathy, III, Laurel, MS, for plaintiff.

Thomas D. Bordeaux, Bordeaux & Jones, Meridian, MS, for defendant.

## MEMORANDUM OPINION
## AND ORDER

PICKERING, District Judge.

This matter is before the Court on Motion for Partial Summary Judgment filed on behalf of the Plaintiff requesting a finding that this case is not governed by ERISA and on a separate Motion for Partial Summary Judgment filed on behalf of the plaintiff on the issue of whether defendant's coverage is primary or secondary to Medicare. The Court, having reviewed the motions, the responses, the briefs of the parties, the authorities cited, and being fully advised in the premise, finds as follows, to-wit;

### FACTUAL BACKGROUND

Gregory Pitts suffered permanent brain damage in an accident in January, 1986 while employed with United Plumbing, Inc. of Ellisville, Mississippi. Prior to that time, American Security Life Insurance Company, the predecessor company of the defendant herein, had issued a policy of health insurance to United covering its employees including Gregory Pitts. After paying more than $100,000 in benefits relating to Pitts' injury, defendant elected to terminate the policy for alleged policy violations which occurred prior to Pitts' accident. Thereafter, in October, 1986, Pitts filed suit in state court for an adjudication of the enforceability of the policy, as well as for certain specified damages under state law. That suit was removed to this court and tried in 1989 and affirmed by the Fifth Circuit on May 21, 1991. *See Pitts By and Through Pitts v. American Sec. Life,* 931 F.2d 351 (5th Cir.1991).

The Fifth Circuit affirmed the district court's finding that Gregory Pitts was entitled "to coverage for all medical expenses resulting from the injury", that "[t]his matter is governed by ... (ERISA)", and that plaintiff's claims for bad faith breach of contract and punitive damages were preempted by ERISA. *Id.,* at 354–58. Plaintiff filed the instant action in November, 1992 to enforce payment of certain medical expenses incurred by Gregory Pitts and not paid by defendant even after the Fifth Circuit decision. Plaintiff alleges that since defendant canceled the policy in question in April, 1987,

his claims do not "relate to" an ERISA plan and thus cannot be preempted. Defendant alleges that it is responsible only for those medical expenses of Gregory Pitts that are in excess of those payable by Medicare and that plaintiff has not cooperated in coordinating with Medicare and thus defendant has not been in a position to pay claims due. Plaintiff asserts that this "forced coordination" of benefits by defendant with Medicare is a breach of State law, federal law and public policy and one ground to which he is entitled to collect damages for. He also claims entitlement to damages for defendant's alleged bad faith failure to comply with the 1991 order of the Fifth Circuit.

### STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil*

*Company v. OKC Corporation,* 812 F.2d 265, 272 (5th Cir.1987).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin,* 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Lit.,* 672 F.2d 436 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods,* 687 F.2d at 119.

### PLAINTIFF'S THEORIES

Plaintiff advances two basic theories as to why his claims are not preempted by ERISA. First, he argues that the policy of insurance at issue here is not an employee benefit plan under ERISA because it was canceled in April, 1987. He next argues that defendant's conduct since the ruling of the Fifth Circuit is so egregious that it has been stripped of its ERISA protection. In the opinion of this Court, the decision of the Fifth Circuit holding that "this matter is governed by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA)", *Pitts By and Through Pitts v. American Sec. Life,* 931 F.2d at 354, is dispositive of this matter. However, in view of plaintiff's strenuous ar-

gument that this matter is not covered by ERISA, the Court has determined that it is instructive to review the law in this regard as enunciated by the Fifth Circuit and the Supreme Court.

### FIFTH CIRCUIT TEST FOR ERISA PREEMPTION

The Fifth Circuit has devised a comprehensive three part test to determine whether a particular plan or program qualifies as an "employee welfare benefit" plan subject to ERISA preemption. Under that test, the Court must determine whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA "employee benefit plan"—establishment or maintenance by an employer or employee organization intending to benefit employees or members. *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir.1993).

### EMPLOYEE BENEFIT PLANS

Pursuant to 29 U.S.C. § 1002 there are two types of "employee benefit plans". They are "employee welfare benefit plans" and "employee pension benefit plans". This case involves only "employee welfare benefit plans" which ERISA defines as "... any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. § 1002(1).

### LEGAL STANDARDS DEFINING ERISA PLANS

The first step in an analysis of whether ERISA applies is to make a determination of whether or not the particular arrangement with which we are faced is a "plan" and the initial inquiry as to whether the "arrangement" is in fact a "plan" is governed by a test first articulated by the Eleventh Circuit in *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982) (en banc), and accepted by this Circuit in *Memorial Hosp. System v. North-*

*brook Life Ins. Co.,* 904 F.2d 236 (5th Cir. 1990). That test is as follows:

> In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.

*Donovan v. Dillingham,* 688 F.2d at 1373.

█ There need be no formal document designated as "the Plan" to establish that an ERISA plan exists. *Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d at 241. Additionally, the purchase of an insurance policy does not, in and of itself, establish the existence of an ERISA plan, "... but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." *Id.* at 242, quoting *Donovan v. Dillingham,* 688 F.2d at 1373. Ultimately, the determination of whether or not the arrangement is an "employee welfare benefit plan" is generally a question of fact governed by a set of well established legal standards. *See Gahn v. Allstate Ins. Co.,* 926 F.2d 1449 (5th Cir. 1991); and *Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991).

## EMPLOYEE BENEFIT PLANS AND ERISA PREEMPTION

█ A finding by the Court that the program at issue is a "plan", i.e., an "employee benefit plan", does not automatically qualify the plan, fund or program as an ERISA plan. *See Hansen v. Continental Ins. Co., supra.* Only those employee welfare benefit plans that are established or maintained by an employer or employee organization for the purpose of providing certain benefits to its employees or members, which do not fall within the safe-harbor provision established by the Department of Labor, are covered by ERISA. *Meredith v. Time Ins. Co., supra.*

Therefore, once the Court determines that the program is an "employee benefit plan", it must then look to Department of Labor regulations to determine if the arrangement is one *excluded* from ERISA's coverage. *Id.*

*See also Kidder v. H & B Marine, Inc.,* 932 F.2d 347 (5th Cir.1991). If the arrangement does not meet the criteria for exclusion from ERISA coverage under the Department of Labor regulations, then the court must go on to determine whether the plan meets the criteria adopted in this circuit which determine what plans *are* covered by ERISA. *Kidder, supra,* and *Gahn, supra.*

## DEPARTMENT OF LABOR REGULATIONS

The Department of Labor regulations provide that the term "employee welfare benefit plan";

> shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j) (1988). *See also, Terry v. Protective Life Ins. Co.,* 717 F.Supp. 1203 (S.D.Miss.1989).

The Fifth Circuit has opined that the presence of the *and* connector indicates that the existence of any one of the four criteria listed in the regulation would prevent a group insurance plan, otherwise qualifying as an ERISA plan, from being excluded from coverage under the Act. *Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d at 241, fn. 6. In other words, if any one of the

factors is present, the plan is not excluded from ERISA coverage by the regulations.

■ Once the Court finds the existence of an "employee benefit plan" and determines that the plan is not excluded from ERISA coverage by the Department of Labor regulations, the plan still does not automatically qualify as an ERISA plan. *See Hansen v. Continental Ins. Co., supra.* Only those employee welfare benefit plans that are "established or maintained" by an employer for the "purpose of providing certain benefits to its employees" are covered by ERISA. *See* 29 U.S.C. § 1002(1). Thus, under this requirement, the two primary elements of an ERISA plan are; (1) it must be established or maintained by an employer, and (2) the employer must have a certain intent—a purpose to provide benefits to its employees. *See Hansen v. Continental Ins. Co., supra.*

Therefore, the third determination for the court in deciding whether or not a particular plan is in fact an ERISA plan is to decide whether the plan was established or maintained by Plaintiff's employer with a purpose of providing those benefits set forth in 29 U.S.C. § 1002(1) to its employees.

## *"ESTABLISHED AND MAINTAINED"?*

■ Ultimately, in order for a plan to be "established and maintained" by an employer and ERISA preemption to apply, the plan, fund, or program requires some control, administration, or responsibility on the part of the employer. In making the determination as to whether an employer "established or maintained" an employee benefit plan,

> "the court should [focus] on the employer ... and [its] involvement with the administration of the plan." *Gahn,* 926 F.2d at 1452. Thus, if an employer does no more than purchase insurance for her employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, she has not established an ERISA plan. *Kidder,* 932 F.2d at 353; *Memorial Hospital,* 904 F.2d at 242. As this court explained in one of its early cases on the subject,

> > [c]onsidering the history, structure and purposes of ERISA, we cannot believe that that Act regulates bare purchases

of health insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits.

*Taggart Corp. v. Life and Health Benefits Admin., Inc.,* 617 F.2d 1208, 1211 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).

*Hansen v. Continental Ins. Co.,* 940 F.2d at 978.

## *"FOR THE PURPOSE OF PROVIDING BENEFITS"?*

After the Court has made a determination that the employer in fact "established or maintained" an employee welfare benefit plan, the other prong of the test is to establish whether the employer had a purpose to provide health insurance, accident insurance, or other specified types of benefits to its employees. In other words, the Court must find that the employer had an "intent to provide its employees with a welfare benefit program through the purchase and maintenance of [the] group insurance policy." *Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d at 241.

## *IS THERE A PLAN?*

In the final analysis, the question of whether there is a "plan" is controlled by the prior decision of this Court affirmed by the Fifth Circuit that "this matter is governed by ... (ERISA)", *Pitts By and Through Pitts v. American Sec. Life,* 931 F.2d at 354. That plan (or policy) was ordered to provide plaintiff with "coverage for all medical expenses resulting from the injury." *Pitts By and Through Pitts v. American Sec. Life,* 931 F.2d at 357–58. Plaintiff argues that since defendant contended before and since the Fifth Circuit decision rendered on May 21, 1991, that the plan (or policy) was canceled, that this matter is outside ERISA. That argument begs the question. For the reasons stated in its opinion, the Fifth Circuit expressly held that the policy was not canceled and that plaintiff's rights had vested and that the plan was covered by ERISA. Neither plaintiff nor defendant can avoid the decision of the Fifth Circuit rendered between these same parties. That decision is

final and is binding on both parties. The only claim that plaintiff has is under the decision of the Fifth Circuit. That decision plainly holds that plaintiff's claim is governed by ERISA. Without that adjudication, plaintiff would have no claim. Plaintiff's action is, therefore, an enforcement action under § 502 of ERISA and also an action to enforce the order of this Court which was affirmed by the Fifth Circuit. *See* 29 U.S.C. § 1132. *See also, Memorial Hosp. System v. Northbrook Life Ins. Co., supra,* and *Pitts By and Through Pitts v. American Sec. Life, supra.*

## PREEMPTION

Once the Court determines that an employee benefit plan has been established and maintained for the benefit of one's employees, it is an "ERISA plan", and state law causes of action for bad faith are largely barred by ERISA's preemption provisions.

The Act provides, "[T]his chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). The Supreme Court has held that this language is "deliberately expansive," and is designed to make regulation of employee benefit plans an exclusively federal concern. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). The term "relate to" in the preemption provision should be given its broadest common sense meaning: a "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). "The preemption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Id.,* at 98–99, 103 S.Ct. at 2900–01.

Plaintiff seems to be asserting that his claims "relate to" an ERISA plan only indirectly and thus are not preempted. The Fifth Circuit has recently clarified the analysis of what "relate to" means:

In *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1467–68 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987), we determined that the most important factor for a court to consider in deciding whether a state law affects an employee benefit plan "in too tenuous, remote, or peripheral a manner to be preempted" is whether the state law affects relations among ERISA's named entities. "[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan." *Id.* at 1467.

*Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d at 249.

*Memorial Hospital* reaffirmed the holding of *Perkins v. Time Ins. Co.,* 898 F.2d 470 (5th Cir.1990), which held that certain state law claims may relate to a benefit plan only indirectly and "in too tenuous, remote, or peripheral a manner" to be preempted. The operative language of *Perkins* is that a state law claim "which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA." *Perkins v. Time Ins. Co.,* 898 F.2d at 473. Plaintiff's claims directly affect the relations among the plan, the plan fiduciaries, and himself as beneficiary. Thus, Plaintiff's claims directly affect the relations among principal ERISA entities. This is the "most important factor" in determining preemption of state law claims. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d at 1477–68. *See also, Corcoran v. United Healthcare, Inc.,* 965 F.2d 1321 (5th Cir.1992).

## THE SAVING CLAUSE

Plaintiff asserts that his State law claims are excused from preemption because of ERISA's "saving clause", which provides, "... nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A). This "saving clause" thus wields a powerful sword.

Speaking of the Conference Committee compromise that broadened ERISA's preemption clause to its present form, the Supreme Court has said, "The change gave the insurance saving clause a much more significant role, as a provision that saved an entire body of law from the sweeping general pre-emption clause."; and "... the saving clause is broad on its face and specific in its reference." *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 745–746, fn. 23–24, 105 S.Ct. 2380, 2392–93, 85 L.Ed.2d 728 (1984).

The saving clause preserves the right of States, given by the McCarran–Ferguson Act, to regulate the "business of insurance." Consequently, to determine whether a State law [1] is excused from ERISA preemption, a court should examine the meaning of the phrase "business of insurance". *See Gahn v. Allstate Ins. Co.,* 926 F.2d at 1453, *citing Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 48, 107 S.Ct. at 1553. In that regard,

> Three criteria are used to decide whether a law regulates the "business of insurance": "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited within the insurance industry."

*Gahn v. Allstate Ins. Co.,* 926 F.2d at 1453, and cases cited therein. A final factor to be considered in determining if a state law is saved from preemption is whether the state law in issue conflicts with the substantive provisions of ERISA—specifically, in this case, with the civil enforcement provisions set forth in 29 U.S.C. § 1132(a). *See Pilot Life v. Dedeaux, supra.*

The law is clear in this Circuit that ERISA preempts, and the saving clause does not exempt, a state law cause of action brought by an ERISA plan participant or beneficiary alleging improper processing of a claim for plan benefits. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 48, 107 S.Ct. at 1553; and *Ramirez v. Inter–Continental Hotels,* 890

F.2d 760, 762 (5th Cir.1989). It is equally clear that ERISA preempts state law claims based on breach of contract, fraud, or negligent misrepresentation, that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled. *See Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d at 245; *citing Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 758 (5th Cir.1990); and *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1295 (5th Cir.1989).

Plaintiff claims that two Mississippi statutes are "saved" from ERISA preemption and thereunder he may pursue state law remedies. The first is Miss.Code Ann. § 83–5–21 (1972). This section provides that judgments against insurance companies shall be satisfied by the insurance company' within ninety days of the judgment becoming final. The penalty for violation of this section is revocation of the offending company's license to do business in this State by the Mississippi Commissioner of Insurance. Defendant contends that the judgment of the Fifth Circuit is declaratory in nature and there is no vested judgment of a sum certain that would invoke this statute. Defendant also contends that the exclusive authority to enforce this regulation lies with the Mississippi Commissioner of Insurance and that plaintiff has no private cause of action thereunder.

The other section plaintiff claims is "saved" is Miss.Code Ann. § 83–9–3(2). This section provides that no insurance company can force coordination of its benefits with those mandated by *Mississippi Medicaid Law.* Defendant contends that its policy does not violate this statute in that it requires coordination with *Medicare* not *Medicaid.*

Defendant argues that each of these statutes "relates to" an employee benefit plan and are, therefore preempted unless they "regulate the business of insurance". Applying the "regulates the business of insurance" test, it is clear that these statutes are specifically directed at and limited to the insurance

---

**1.** The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. 29 U.S.C. § 1144(c)(1). *See also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 48, fn. 1, 107 S.Ct. at 1553, fn. 1.

industry; they may have the effect of spreading the policyholder's risk; and can be an integral part of the policy relationship between the insurer and the insured. Additionally, neither statute alone conflicts with the civil enforcement provisions of ERISA. Therefore, if the Court finds that these statutes are state laws which "regulate the business of insurance" and are thus saved from ERISA preemption, the question which then confronts the Court is whether or not the Plaintiff can prosecute a *claim* under these statutes and, if so, is such a *claim* "saved" as a law purporting to regulate insurance.

█ The statutory penalty provided for a violation of § 83–9–3 has been codified and provides:

> Any person, partnership, or corporation wilfully violating any provision of sections 83–9–1 to 83–9–21, or order of the commissioner made in accordance with said sections, shall forfeit to the people of the state a sum not less than fifty dollars ($50.00) nor more than one thousand dollars ($1,000.00) for each such violation, which may be recovered by a civil action. The commissioner may also suspend or revoke the license of an insurer or agent for any such violation.

Miss.Code Ann. § 83–9–19 (1972). Section 83–5–21 provides for similar enforcement provisions by the Mississippi Commissioner of Insurance. It does not appear from the plain wording of the statutes that the Plaintiff possesses a private right of action to enforce either section. Regardless, it is clear that these statutes directly conflict with the civil enforcement provisions of 29 U.S.C. § 1132(a). They provide a type of relief not specifically set out in the civil enforcement provisions of the Act. Thus, even if Plaintiff could assert a claim under either statute and the statute was one which "regulated the business of insurance", thereby invoking the saving clause, it would still be preempted since any law which conflicts with the substantive provisions of ERISA falls within its preemption clause. *See Pilot Life Ins. Co. v. Dedeaux, supra.* Any other remedy Plaintiff could seek under either statute would arise under state common law. As such, they would be preempted as well. *See Protective*

*Service Life Ins. Co. v. Carter,* 445 So.2d 215 (Miss.1983), and *Pilot Life Ins. Co. v. Dedeaux, supra.*

However, Plaintiff has asserted that if either § 83–9–3 or § 83–5–21 is saved from preemption, then he is entitled to pursue his full range of remedies under state common law. His reasoning is that once a law is saved from preemption, he is entitled to pursue any remedy available thereunder.

The Supreme Court has explained that, "[u]nder the civil enforcement provisions of ERISA a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 53, 107 S.Ct. at 1556. *See also* 29 U.S.C. § 1132(a). Other remedies include the right of a participant, beneficiary, or fiduciary to file a civil suit to "obtain other appropriate equitable relief...." 29 U.S.C. § 1132(a)(3).

█ Any argument that one is entitled to seek any relief regarding an ERISA plan other than that set forth in the civil enforcement provisions faces the Supreme Court's edict that "[t]he six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted [29 U.S.C. § 1132(a) ], however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). (emphasis in original). Thus, any state common law claim that is saved, but which conflicts with a substantive provision of ERISA, is preempted to the extent of such conflict. *Id.* If the conflict exists only in the remedy, the ERISA remedies are exclusively available.

## PLAINTIFF'S REMEDIES AND "FEDERAL COMMON LAW"

█ If Plaintiff's claims are limited to ERISA, plaintiff argues that federal courts

are under a mandate from Congress and the Supreme Court to "... develop a federal common law of rights and obligations under ERISA–regulated plans." *Pilot Life Ins. Co. v. Dedeaux, supra,* 481 U.S. at 56, 107 S.Ct. at 1557. *See also* 129 Cong.Rec. 29942 (1974) (remarks of Sen. Javits). "However, this power extends only to areas which federal law preempts but does not address." *Degan v. Ford Motor Co.,* 869 F.2d 889, 895 (5th Cir.1989). It is contended that this body of "federal common law" is to be developed from the common law of the states. As recently pointed out by the Supreme Court, on issues confronting the Court for which ERISA does not provide guidance, "the Court may look to general principles of common law or state law that may be persuasive." *Farm Bureau Life Ins. Co. v. Moore,* 993 F.2d 98, 102 (5th Cir.1993). *See also* 29 U.S.C. §§ 1001–1461 (1988). Under the general concept of that federal common law to be developed, as espoused by the plaintiff, he would be entitled to extra-contractual and punitive damages for the wrongful denial of his claims and the other alleged egregious conduct by the defendant.

A widely cited Eleventh Circuit case discussed the development of federal common law in ERISA cases:

> The claim that Congress intended for the federal courts to create a body of federal common law to govern ERISA cases does not, as appellant suggests, give a federal court *carte blanche* authority to apply any prevailing state common law doctrine it chooses in ERISA cases. A federal court may create federal common law based on a federal statute's preemption of an area only where the federal statute does not expressly address the issue before the court. *See* C. Wright, *Law of Federal Courts* § 60, at 283–84 (3rd. ed. 1976); *see also Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). Furthermore, even when it is appropriate for a federal court to create federal common law, it may use state common law as the basis of the federal common law only if the state law is consistent with the policies underlying the federal statute in question; *see Lincoln Mills,* 353 U.S. at

457, 77 S.Ct. at 918; *Scott* [*v. Gulf Oil Corp.*] 754 F.2d [1499] at 1502 [ (9th Cir. 1985) ]; federal courts may not use state common law to re-write a federal statute.

*Nachwalter v. Christie,* 805 F.2d 956, 959–60 (11th Cir.1986).

The Fifth Circuit has recently spoken on the development of federal common law and the availability of the type damages Plaintiff seeks to pursue under ERISA:

> The plain language of this statute does not mention recovery of extracontractual or punitive damages. Nothing in the statute instructs us to fashion a federal common law remedy to grant plaintiffs the right to recover punitive or extracontractual damages....
>
> Medina points to legislative history that indicates a willingness on the part of Congress to allow federal courts to mold a federal common law of ERISA....
>
> Unfortunately for Medina, Congress has had almost two decades to enact its putative intent into law and has not done so. Had Congress intended to develop ERISA remedies additional to the ones specifically crafted, it has had ample opportunity to enact such legislation. Since Congress has not translated its intent into law, we are loathe to take this initiative on our own.

*Medina v. Anthem Life Ins. Co.,* 983 F.2d 29, 31 (5th Cir.1993).

It is thus clear, under prevailing federal law, that neither extracontractual nor punitive damages are available to Plaintiff as a "federal common law" remedy for any claim he asserts under 29 U.S.C. § 1132(a)(1)(B).

### ERISA's "OTHER APPROPRIATE EQUITABLE RELIEF"

Plaintiff also argues that he can pursue extracontractual and punitive damages under the "other appropriate equitable relief" language of § 1132(a)(3). Whether such damages were available under that section was a question since *Massachusetts Mut. Life Ins. Co. v. Russell, supra.* However, the Fifth Circuit has now spoken on the issue:

> Section 502(a)(3) provides relief apart from an award of benefits due under the terms of the plan. When a beneficiary

simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B).... Damages that would give a beneficiary more that he or she is entitled to receive under the strict terms of the plan are typically termed "extracontractual." Section 502(a)(3) by its terms permits beneficiaries to obtain "other appropriate equitable relief" to redress (1) a violation of the substantive provisions of ERISA or (2) a violation of the terms of the plan.

*Corcoran v. United Healthcare, Inc.*, 965 F.2d at 1335.

The Fifth Circuit went on to recognize that the courts are to be guided by general principles of trust law, and to some extent by contract law, in deciding what is meant by "other appropriate equitable relief." However, it found that the emotional distress and mental anguish damages sought by the Corcorans were not recoverable under § 502(a)(3) (29 U.S.C. § 1132(a)(3)). *Id.* at 1338.

In a decision handed down June 1, 1993, the U.S. Supreme Court has held that "other appropriate equitable relief" includes neither compensatory nor punitive damages:

> Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*— monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of *legal* relief.... And though we have never interpreted the precise phrase "other appropriate equitable relief", we have construed similar language of Title VII of the Civil Rights Act of 1964 ...—"any other equitable relief as the court deems as appropriate," ...—to preclude "awards for compensatory or punitive damages"....

*Mertens v. Hewitt Associates,* —— U.S. ——, ——, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993) (emphasis in original). The Court went on to note that "[t]he authority of courts to develop a 'federal common law' under ERISA, see *Firestone* [*Tire & Rubber Co. v. Bruch*], *supra* [489 U.S. 101], at 110 [109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) ], is

not the authority to revise the text of the statute." *Id.,* at ——, 113 S.Ct. at 2070.

It is therefore now clear that neither extracontractual nor punitive damages are available under the civil enforcement provisions of ERISA.

## MEDICARE AND COORDINATION OF BENEFITS

Plaintiff's final argument is that defendant has wrongfully forced coordination of its policy benefits with Medicare. Gregory Pitts became eligible for Medicare benefits on July 1, 1988. Defendant is liable for all expenses related to Gregory Pitts' injury which were incurred prior to that time. Since that date, defendant alleges that it is allowed to coordinate benefits with Medicare. Defendant contends it becomes a secondary payer to Medicare leaving Medicare as the primary payer. Plaintiff contends to the contrary and alleges that he may bring a private action to collect damages twice the amount that defendant wrongfully forced Medicare to pay and that it failed to pay. *See* 42 U.S.C. § 1395y(b)(3)(A). Plaintiff alleges that defendant's coordination of benefits language in its policy is void as against public policy and is in violation of several amendments to the Social Security Act.

The only Fifth Circuit case cited by either party indicates that a policy provision requiring coordination with Medicare would be valid. *See Kemp v. Republic Nat. Life Ins. Co.,* 649 F.2d 337 (5th Cir.1981). Plaintiff's complaint with this case is that it was rendered in 1981, several years before several substantive amendments to the Social Security Act wherein Congress stated an intent that Medicare become secondary payer, in most situations, for fiscal reasons. As a general proposition, this Court agrees with that public policy argument. It is a valid requirement that insurance coverage bought and paid for by individuals should be required to pay before a government subsidized plan incurs payment obligations. However, Congress has stated an equally valid intent that ERISA plans offered by employers with fewer than twenty employees should not be subject to certain regulations, including the restriction against coordination with Medicare. *See* 42 U.S.C. § 1395y(b)(1)(A)(ii) (1990).

While this language is not binding on this Court, it does indicate Congressional intent that small plans should not be prohibited from requiring coordination of benefits.

The Court recognizes that plaintiff contends that none of these code sections are exactly on point. However, the Court is of the opinion that by analogy, the intent of Congress is clear that plans involving fewer than twenty employees should be exempt from the Medicare coordination restrictions. Neither the plaintiff nor the defendant have provided any Fifth Circuit case, statutory authority or legislative history more on point. The Court has located one 1992 case that has held that a coordination requirement with language similar to defendant's policy language is not void as against public policy nor violative of the Social Security Act. *See Maxa v. John Alden Life Ins. Co.,* 972 F.2d 980 (8th Cir.1992); *cert. denied,* —— U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 357 (1993).

This Court is of the opinion that Medicare is the primary payer and defendant is secondary. This finding is declaratory in nature as between these parties and as to this action only and is not binding should the United States choose to enforce whatever subrogation rights it may claim against the defendant or if the plaintiff comes forward with authority or evidence to the contrary that has not been reviewed by the Court.

### REMEDIES

Plaintiff is entitled to the remedies available under ERISA. Depending upon the facts, plaintiff may be entitled to damages for defendant's failure to comply with the decision previously rendered between these parties by this Court and affirmed by the Fifth Circuit. The question of whether the defendant has failed to comply with the previous order of this Court is not ripe for decision. If the defendant was advising health providers that the policy had been canceled some year and one-half after the Fifth Circuit decision, that would seem to be rather egregious. However, defendant contends that if plaintiff had cooperated the claims could have been processed. That issue remains for trial. Neither party has briefed the issue of what remedies are available for failure to abide by a final order of this Court, wilful or otherwise. This Court is convinced that it has the inherent power to see that its orders are complied with.

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff's motions for partial summary judgment are DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's demand for a jury trial is stricken. This action shall be tried to the Court pursuant to *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980).

SO ORDERED AND ADJUDGED.