CONFEDERATION OF POLICE, an Illinois Not for Profit Corporation, Anthony S. Zdziarski, and Arthur J. Mikolajczyk

v.

The CITY OF CHICAGO, a Municipal Corporation of Illinois, Michael Bilandic, Mayor of the City of Chicago, James O'Grady, Superintendent of the Police of the City of Chicago, and Clark Burrus, Comptroller of the City of Chicago.

No. 79 C 581.

United States District Court,
N. D. Illinois, E. D.

Jan. 2, 1980.

Donald L. Metzger of Metzger & Associates, Ltd., Chicago, Ill., for plaintiff.

George S. Lalich, M. Ellen Sutton, Asst. Corp. Counsels, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiffs, the Confederation of Police and several individual police officers, bring this nine-count complaint against the City of Chicago and the Mayor, Comptroller and Police Superintendent of Chicago. They seek damages and injunctive relief because of defendants' policy of compensating other city employees at the rate of time and one-half for overtime work while paying plaintiffs at their regular wage level for overtime work. Plaintiffs allege that these disparate wages were paid during the snow emergency of the winter of 1979, and throughout the past eleven years whenever overtime work has been required. The actions of defendants are alleged to deny to plaintiffs the equal protection of the laws and to deprive them of property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States. Plaintiffs seek damages under 42 U.S.C. § 1983 and also request an order enjoining defendants from expending funds received from the Federal Disaster Relief Administration to further the allegedly unconstitutional practices. Defendants have moved to dismiss for failure to state a claim upon which relief can be granted. For the following reasons, we will grant the motion.

### Equal Protection

Plaintiffs allege that defendants, during the snow emergency of 1979, determined that certain employees of the City of Chicago, including employees of the Departments of Fire, Buildings, Streets and Sanitation and Water and Sewers, would be paid by the City of Chicago for their overtime work at a rate of one and one-half times their normal hourly rate ("time and one-half"). It was further determined that police officers who worked overtime due to the snow emergency would be paid for their overtime work at the normal hourly rate. This same difference in overtime pay has allegedly been in existence since 1968. This, plain-

tiffs allege, is a denial of the equal protection of the laws.

■ The framework for analyzing claims for alleged deprivations of equal protection is now well established:

We must decide, first, whether [the challenged governmental action] operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny. . . . If not, the Texas scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination . . . .

*San Antonio School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). The parties agree that the rational basis standard for equal protection analysis is appropriate in this case. The question, then, is whether the challenged classification bears a rational relationship to a legitimate governmental purpose.

■ Defendants, in support of their actions, refer us to the overall compensation and benefits plan governing police officers. Defendants' argument appears to be that overtime compensation is but one aspect of the total compensation paid to police officers and cannot fairly be considered as an isolated factor. In other words, the decision to pay police officers at the normal hourly rate was the result of a consideration of the entire benefit package which

police officers enjoy and the parties' reasonable expectations concerning the nature of police work. We believe this reasoning could justify the city's overtime policy. There is no question that police officers occupy a unique position in society. The functional differences between police officers and other city employees may justify different treatment for the police officers. *See Vorbeck v. McNeal,* 407 F.Supp. 733, 739 (E.D.Mo.1976), *aff'd,* 426 U.S. 943, 96 S.Ct. 3160, 49 L.Ed.2d 1180, *reh. denied,* 429 U.S. 874, 97 S.Ct. 194, 50 L.Ed.2d 156 (upholding the exclusion of police officers from certain collective bargaining procedures); *see generally, State ex rel. Wallace v. City of Celina,* 29 Ohio St.2d 109, 279 N.E.2d 866 (1972) (holding that functional differences between certain kinds of judges justified their separate classification by the state).

■ In any event, we think plaintiffs have failed to state a claim of the kind contemplated by the Equal Protection Clause. *Cf. International Ass'n of Firefighters, etc. v. City of Sylacauga,* 436 F.Supp. 482 (N.D.Ala.1977).[1] Surely the court should not sit as a board of review for every decision of a state agency concerning employment conditions for different classes of government employees. If plaintiffs in this case were entitled to relief, then every government employee who feels that he or she is entitled to the same salary, vacation schedule, working hours and other employment benefits received by some other government employee may also have an equal protection claim. We would have to compare the functions of the employees in different departments of the government

---

1. This case involved a challenge to the City of Sylacauga's distinction between city policemen and city firefighters allowing policemen to be promoted on the basis of competitive merit examinations but allowing firefighters to be promoted solely on the basis of the fire chief's recommendation. The court found a cause of action grounded in the Equal Protection Clause of the Fourteenth Amendment and found that the firefighters' rights to equal protection were violated. The case is distinguishable from the instant case, however, because the court there relied on a Rule of the Civil Service Board of

the City of Sylacauga, promulgated pursuant to state law, specifically providing that promotions of city employees could only be made on the basis of competitive tests. The state law also specifically provided that promotions could not be based on the recommendation of any city officer or official. The practice of the fire department, then, was directly contrary to the city rule and to the expressed policy of the state law. In the instant case, plaintiffs have pointed to no specific city or state rule requiring all city employees to be compensated according to a uniform overtime wage policy.

and determine who is entitled to what specific benefits. This is not a proper judicial function. The court is not in a position to assess the budgetary needs and employment requirements of the various governmental agencies and the value of the services provided by them. *See generally, Hawkins v. Preisser*, 264 N.W.2d 726 (Sup.Ct.Iowa 1978). Neither side has referred us to a case in point, nor have we found one in our own research. Our analysis is result oriented, and we think that is appropriate in these circumstances.

We hold that the overtime policy complained of by plaintiffs does not deny them equal protection of the laws in violation of the Fourteenth Amendment.

### Due Process

Plaintiffs also claim that the challenged policies of defendants have deprived them of property without due process of law, in violation of the Fourteenth Amendment's protection.

█ To have a property interest in a governmental benefit, such as overtime wages, it is not enough that a person have simply need or desire for it. "He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such an entitlement may stem from state laws conferring a specific benefit or from "rules or mutually explicit understandings that support [the] claim of entitlement . . . ." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

█ In the present case, plaintiffs have not referred us to any state law which entitled them to be compensated for overtime work at the rate of time and one-half. Rather, they appear to rely on the fact that employees of other city departments are paid at such a rate and have been over the past eleven years. Plaintiffs do not allege that they were led to believe they would be paid at a rate of time and a half. It does not follow that because other city employees were paid at the higher rate plaintiffs would be paid at that rate. Plaintiffs have nothing more than a "unilateral expectation" of the higher wages, insufficient to trigger the protections of due process. We grant the motion to dismiss plaintiffs' claim insofar as it alleges that plaintiffs are being deprived of property without due process of law.

### Federal Funding

█ Finally, plaintiffs ask that we enjoin the defendants from using funds received from or to be received from the Federal Disaster Relief Administration and the Federal Law Enforcement Assistance Administration. Since we have found that defendants' actions have not violated any Fourteenth Amendment rights of plaintiffs, we will deny this request for injunctive relief. Moreover, a party seeking injunctive relief must show that he will suffer irreparable injury and that he has no adequate remedy at law. *Adamszewski v. Local Lodge 1487, International Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 496 F.2d 777, 786 (7th Cir. 1974), *cert. denied*, 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 271. Here, even if plaintiffs had stated a claim, we believe an award of money damages would have been an adequate remedy.

Defendants' motion to dismiss is granted.