David O'QUINN, Alvin L. Martin, Danny Jackson, James Golleher and John Fountain

v.

CHAMBERS COUNTY, TEXAS, and Sheriff C.E. Morris, Individually and in his Official Capacity as Sheriff of Chambers County, Texas.

Civ. A. No. G–85–308.

United States District Court, S.D. Texas, Galveston Division.

June 4, 1986.

Harris D. Butler, III, Law Offices of Harris D. Butler, III, Houston, Tex., for plaintiffs.

Carla Cotropia, Mills, Shirley, McMicken & Eckel, Galveston, Tex., William H. Bruckner, Roxella T. Cavazos, Bruckner & Sykes, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

HUGH GIBSON, District Judge.

Plaintiffs, present and former Deputy Sheriffs of Chambers County, Texas, sue Chambers County and Sheriff C.E. Morris, individually and in his official capacity. Plaintiffs seek damages, and declaratory and injunctive relief.

Plaintiffs allege that, in wilful violation of the Fair Labor Standard Act (FLSA), 29 U.S.C. §§ 207, 216, defendants have not compensated them for earned "overtime" that accrued after April 15, 1985. Plaintiffs also sue on their overtime claim under 42 U.S.C. § 1983, alleging deprivation of their Fifth Amendment due process and equal protection rights, various retaliatory acts allegedly taken in response to plaintiffs' requests for overtime compensation and to this suit. Plaintiffs finally aver a § 1985 claim for tampering with witnesses.

Defendants move with supporting evidence for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs have affirmed their factual allegations with affidavits. Although some of plaintiffs' statements do not meet the personal knowledge requirement of Rule 56(e), the primary factual issues are disputed and thus cannot be resolved on summary judgment. Therefore, the Court may only grant defendants' motion if they are entitled to judgment on a claim as a matter of law. *See generally Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465.

### I. FLSA

The primary FLSA issues in this case arise from *Garcia v. San Antonio Metro Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). In *Garcia,* the Supreme Court overruled *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The *Garcia* Court held that the minimum pay and overtime provisions of the FLSA apply to the states, even when they act "in areas of traditional governmental functions," such as police work. 83 L.Ed.2d at 1021. Within only ten months, the Fair Labor Standards Amendments of 1985, Pub.L. No. 99–150, *Reprinted in* 1985 U.S.Code Cong. & Ad.News, 99 Stat. 787, were enacted in response. Effective April 15, 1986, section 2(c) of the Amendments provides that no state or political subdivision of a state shall be liable under the FLSA for minimum pay and overtime violations occurring before April 15, 1986. *See Karte-*

*vold v. Spokane County Fire Protection District No. 9,* 625 F.Supp. 1553, 1562 (E.D.Wash.1986) (Congress "cut off liability incurred as a result of *Garcia nunc pro tunc* to the date the decision was announced").

■ Retroactive application of the Amendments to a post-*Garcia* claim arising before the Amendments, plaintiffs argue, would deprive them of due process. The Court disagrees.[1] Plaintiffs must show that they had a property interest in overtime that the Amendments deprived them of without due process. Plaintiffs do not have a property interest. Furthermore, Congress acted rationally when enacting the Amendments, thereby giving plaintiffs all the process that they are due.

**A.** *Property*

■ Plaintiffs claim a property interest[2] (overtime) under the FLSA that vested after *Garcia* and prior to the Amendments. A property interest in a statutory benefit, however, has thus far been limited to cases where individuals had enjoyed benefits under the statute. *E.g., Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Stern v. Tarrant County Hospital District,* 755 F.2d 430, 435 (5th Cir.1985) (Clark, C.J., concurring). *Cf. Mohler v. State of Mississippi,* 782 F.2d 1291 (5th Cir. Feb. 18, 1986) (per curiam) (Mississippi statute requiring state to compensate its teachers comparably with other teachers in region did not create constitutionally protected property

interest if state officials failed to execute statute) (dictum). Thus, the Court finds that plaintiffs do not have a property interest in overtime under the FLSA. *See Confederation of Police v. City of Chicago,* 481 F.Supp. 566, 569 (N.D.Ill.1980) (police suing for overtime pay had no property interest in overtime because no state law or mutually explicit understanding entitled them to overtime).

**B.** *Due Process*

■ Legislation in the field of national economic life comes to the Court with a presumption of constitutionality, even if the legislation applies retroactively. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 727–29, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601, 610–11 (1984); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15–17, 96 S.Ct. 2882, 2892–93, 49 L.Ed.2d 752 (1976). Retroactive economic legislation must only meet the test of due process, which requires that the "retroactive application of the legislation is itself justified by a rational legislative purpose." *Pension Benefit Guaranty Corp.,* 467 U.S. at 727–29, 104 S.Ct. at 2717, 81 L.Ed.2d at 611. *See generally* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 476 (2d ed. 1983) ("If the legislation does have a rational relationship to a proper governmental end, the Court will uphold the retroactive law even though it may impair recognizable property rights"). "[T]he burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and

---

**1.** Because the Court finds the Amendments constitutional, it has not certified to the Attorney General of the United States the fact that the plaintiffs have challenged the constitutionality of the Amendments. Fed.R.Civ.P. 24(c) and 28 U.S.C. § 2403(a) require notice to the attorney general and an opportunity to intervene if the constitutionality of federal legislation affecting the public interest is challenged. But failure to give the notice does not deprive the court of jurisdiction to decide the case. *See generally* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1915 (1972). The Court holds that it meets the requirements of Rule 24(c) and § 2403(a) by certifying a copy of this order to the attorney general and by entertaining his

motion for rehearing if he believes that intervention is required. *See Jones v. City of Lubbock,* 727 F.2d 364, 372 (5th Cir.1984) (procedure used by court of appeals under 28 U.S.C. § 2403(a)).

**2.** The Court does not address plaintiffs' argument that their interest is a "vested" property right. "[I]t has long been recognized that the term 'vested right' is conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute." Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv.L.Rev. 692, 696 (1960) (footnote omitted).

irrational way." *Travelers Insurance Co. v. Marshall,* 634 F.2d 843, 848 (5th Cir. 1981) (quoting *Turner Elkhorn,* 428 U.S. at 15, 96 S.Ct. 2892).

The Court finds that Congress clearly acted rationally to further a legitimate legislative goal. The Senate Report to the Amendments explains the purpose of the retroactive provisions:

> [M]ost state and local government employees only became covered [by the FLSA] as of the Supreme Court's *Garcia* decision in February 1985. The Committee is not retreating from the principles established by Congress.... 
>
> At the same time, it is essential that the particular needs and circumstances of the States and their political subdivisions be carefully weighed and fairly accommodated. As the Supreme Court stated in *Garcia,* "the States occupy a special position in our constitutional system." Under that system, Congress has the responsibility to ensure that federal legislation does not undermine the States' "special position" or "unduly burden the States." ...
>
> The Committee recognizes that the financial costs of coming into compliance ... are a matter of grave concern to many states and localities. We have received extensive testimony on this subject from representatives of state and local governments and organized labor. Although the testimony reflects sharp disagreements ... the Committee concludes that states and localities required to comply with the FLSA will be forced to assume additional financial responsibilities which in at least some instances could be substantial.
>
> Jurisdictions which had relied for a decade upon the exemptions accorded under **National League of Cities** would be required to meet FLSA standards immediately under *Garcia.* Although many jurisdictions commendably and successfully have undertaken to do so, others have expressed an urgent need for lead-time in which to render their budgetary priorities while maintaining fiscal stability.... 

*S.Rep. No.* 99–159 at 7–8, *reprinted in* 1985 U.S.Code Cong. & Ad.News 651, 655–56 (emphasis added). The Committee went on to note that it "deferred application of the overtime provisions until exactly one year after the mandate in *Garcia* so that state and local governments may make necessary adjustments in their work practices, staffing patterns, and fiscal priorities." *Id.* at 15, U.S.Code Cong. & Ad.News at 663. Thus, Congress acted to protect the fiscal integrity of the states and their political subdivisions. This is clearly a rational and legitimate purpose.[3]

This conclusion is buttressed by a series of cases that arose out of a previous Congressional amendment of the FLSA. The Portal-to-Portal Act of 1947, 29 U.S.C. § 251 et seq., relieved employers from liability for failure to pay overtime and minimum wages to employees who had a claim under the FLSA but who did not have a claim based on a contract, custom, or practice. The district courts uniformily held that the Portal-to-Portal Act was constitutional. *E.g., Holland v. General Motors Corp.,* 75 F.Supp. 274 (W.D.N.Y.1947); *Ackerman v. J.I. Case Co.,* 74 F.Supp. 639 (E.D.Wisc.1947); *Seese v. Bethlehem Steel Co.,* 74 F.Supp. 412 (D.Maryland 1947). Judge Chesnut reasoned persuasively in *Seese:*

> As Congress had the constitutional power to originally enact the Fair Labor Standards Act and thereby affect the relationships of employer to employee in

---

**3.** *Garcia* arguably contemplates action such as Congress took. While holding that Congressional power under the Commerce Clause is not limited by federal respect for state activity in areas of "traditional governmental functions," the *Garcia* Court reasoned that such a limitation is not necessary because states participate in the federal government. "The political process ensures that laws that unduly burden the States will not be promulgated." 469 U.S. at ——, 105 S.Ct. at 1020, 83 L.Ed.2d at 1037. *See generally* Howard, Garcia *and the Values of Federalism: On the Need for a Recurrence to the Fundamental Principles,* 19 Ga.L.Rev. 789, 790 (1985) ("if the states 'as states' want protection within the constitutional system they must look to Congress, not to the courts.")

interstate commerce, it is not to be doubted that it had equal power in the same field to amend or modify these relationships.... . It is probably true that when the Fair Labor Standards Act was first enacted, it necessarily affected then existing purely private contracts of employment. ... If the original Act validly had that effect, it is difficult logically to see how the present modification of existing rights is less valid. If it had thought wise to do so, Congress could have repealed the Fair Labor Standards Act in toto and if the repealing Act ... did not contain a saving clause with respect to [existing claims], it is not apparent why it would have been invalid as to them.

74 F.Supp. at 418–419.

Finally, if the retrospective aspects of the Amendments were "particularly harsh and oppressive," the Amendments might violate due process despite a rational legislative purpose. *Pension Benefit Guaranty Corp.,* 467 U.S. at 730–732, 104 S.Ct. at 2719, 81 L.Ed.2d at 613 (citations omitted). The effects of the Amendments, however, are not "harsh and oppressive". Plaintiffs argue that they detrimentally relied on *Garcia.* Yet prior to *Garcia* they worked outside of the FLSA's requirements without any contractual or statutory right to overtime. *Garcia* may have created hopes that were temporarily dashed by the Amendments, but there was no reliance. Nor, as plaintiffs argue, did their claim for overtime and the defendants' alleged subsequent retaliation amount to detrimental reliance. Any harm plaintiffs suffered resulted from the acts of defendants and were not the result of Congressional amendment of FLSA.

## C. *Eratta*

■ Plaintiffs also apparently seek damages for defendants' alleged failure to keep records pursuant to 29 U.S.C. § 211(c). Private causes of action under the FLSA are established in § 216 which does not provide a cause of action for violation of § 211. *See Marchak v. Observer Publications, Inc.,* 493 F.Supp. 278, 281 (D.C.R.I. 1980).

## II. Section 1983

### A. *FLSA*

■ Plaintiffs' § 1983 action for failure to pay overtime pursuant to the FLSA must be dismissed. A plaintiff may sue under § 1983 for violations of rights conferred by federal law. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Plaintiffs' rights under the FLSA have not been violated, however, because of the effect of the Amendments. Moreover, the FLSA probably provides an exclusive remedy for violations of rights conferred by the FLSA. *See Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Ruth Anne M. v. Alvin Independent School District,* 532 F.Supp. 460 (S.D.Tex.1982).

### B. *Due Process*

■ Plaintiffs argue that they have a property interest in overtime, independent of the FLSA, which they were deprived of without due process. On August 2, 1985, Sheriff Morris notified the deputies by memorandum that they would henceforth be hourly employees. Hourly employees are entitled to overtime pay. *See* Personnel Policies Handbook of Chambers County, Texas 13. The memorandum also provides that all overtime must be approved and that if a deputy works past his shift, he is to take compensatory time off during his next shift. Thus, there might be a mutual understanding giving rise to a property interest in approved overtime. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Plaintiffs, however, have not shown a due process violation. Plaintiffs could sue in state court to recover damages or, failing that, to obtain a writ of mandamus ordering payment. *See Overton v. City of Houston,* 564 S.W.2d 400 (Tex.Civ.App.—Houston [1st Dist.] 1978, *writ ref'd n.r.e.*); *Lovell v. Bynum,* 315 S.W.2d 20 (Tex.Civ. App.—Austin, 1958, *writ ref'd n.r.e.*) The Court can see no reason why this is not all the process plaintiffs are due. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

## C. *Equal Protection*

Plaintiffs do not contend that they were treated differently than other deputy sheriffs. Sheriff Morris and Jimmie Moorehead, Treasurer of Chambers County, Texas, have stated in uncontradicted affidavits that all deputy sheriffs were treated the same concerning the payment of overtime. Plaintiffs thus simply alleged that other county employees were paid overtime and they were not. Plaintiffs claim that defendants have thereby selectively applied the FLSA and the County's personnel policies.

Plaintiffs' argument troubles the Court. Plaintiffs seek to create a § 1983 claim out of a state action for overtime wages by invocation of the words "equal protection". Of course, unequal application of a law that is fair on its face may deny euqal protection. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Zeigler v. Jackson*, 638 F.2d 776 (5th Cir.1981). But implicit in all equal protection analysis is the concept that the aggrieved party was denied equal protection of the laws because of his identity as a member of some class. It is the act of classifying, whether through legislation or administrative application of the law, that implicates equal protection. *See generally* L. Tribe, *American Constitutional Law*, ch. 16 (1978). Plaintiffs, however, suggest a classification that strains credulity: deputy sheriffs. Plaintiffs, in effect, ask the Court to find that deputy sheriffs are a class who are irrationally being treated differently from similarly situated individuals by defendants' failure to pay them overtime.

The Court holds that plaintiffs' position cannot withstand defendants' motion for summary judgment. Assuming that plaintiffs have stated an equal protection claim, when, as here, plaintiffs are not members of a suspect class, the state's actions are constitutional if they have a reasonable basis. *See Zeigler*, 638 F.2d at 779. The issue here is whether the state may decide not to pay overtime to deputy sheriffs.

In *Anderson v. Winter*, 631 F.2d 1238 (5th Cir.1980), Mississippi Bureau of Narcotics agents argued that the state's dual retirement system deprived them of equal protection because it provided more liberal retirement benefits for officers of the Mississippi Highway Safety Patrol. The court held that because the classification did not infringe upon a fundamental right or operate to the disadvantage of some suspect class, the court would apply the "rational-basis test": "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Id.* at 1240 (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)). The statute meets this test if "any state of facts reasonably may be conceived to justify" the classification. *Id.* at 1241 (quoting *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)). *See also Alabama State Federation of Teachers, AFL–CIO v. James*, 656 F.2d 193, 195 (5th Cir.1981) (burden on plaintiffs to show statute does not meet rational-basis test). Thus, the possible goal of attracting capable Highway Safety Patrol Officers and compensating them for dangerous work justified the classification. 631 F.2d at 1241. The Agents' argument that the classification is underinclusive, while reasonable, must be addressed to the legislature because the federal courts should not establish fiscal priorities for the states. *Id.* at 1241. As another federal court stated:

> The functional differences between police officers and other city employees may justify different treatment for the police officers... . Surely the court should not sit as a board of review for every decision of a state agency concerning employment conditions for different classes of government employees. If plaintiffs in this case were entitled to relief, then every government employee who feels that he or she is entitled to the same salary, vacation schedule, working hours and other employment benefits received by some other government employee may also have an equal protection claim. We would have to compare the functions of the employees in different departments of the government and de-

termine who is entitled to what specific benefits. This is not a proper judicial function. The court is not in a position to assess the budgetary needs and employment requirements of the various governmental agencies and the value of the services provided by them.

*Confederation of Police,* 481 F.2d at 568–69.

### D. *First Amendment*

■ Plaintiffs aver that defendants retaliated against them as a result of their requests for overtime and for filing this suit. Different plaintiffs allege, inter alia, resultant: suspension, termination, reduction in pay, or arbitrary reprimands. They assert that defendants have thereby violated their First Amendment rights. Defendants deny any retaliation.

It is well established that a public employer may not take otherwise permissible action—such as terminating an at-will employee—in retaliation for the employee's exercise of his First Amendment rights. *E.g., Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *See also Swilley v. Alexander,* 629 F.2d 1018 (5th Cir.1980) (disciplined treated same as discharge in First Amendment analysis). The sina qua non of plaintiffs case is that the speech be constitutionally protected; that is, that the speech touch upon a matter of public concern. *Connick,* 461 U.S. at 164, 103 S.Ct. at 1699.[4] "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147, 103 S.Ct. at 1690. Whether the speech is protected is an issue of law. *Id.* at 148 n. 7, 103 S.Ct. at 1690 n. 7.

In this case, plaintiffs' attempts to secure their rights under the FLSA, although mistaken, surely touched upon matters of public concern. Congress enacted the FLSA to protect the working public. Moreover, as Judge Reinhardt opined for the Ninth Circuit in a factually similar case: "compensation levels undoubtedly affect the ability to attract and retain qualified police personnel, and the competency of the police force is surely a matter of great public concern." *McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir.1983). *See also Dougherty v. Barry,* 604 F.Supp. 1424 (D.D.C.1985) (fire fighter's participation in rally to protest budgetary and promotional policies protected). Although overtime pay may be an issue of private concern to plaintiffs, it may also be an issue of public concern. *See Gonzalez v. Benavides,* 774 F.2d 1295, 1300–01 (5th Cir. 1985).

Because plaintiff's speech touched upon a matter of public concern, the Court must turn to the *Pickering* balancing test as explicated in *McBee v. Jim Hogg County, Texas,* 730 F.2d 1009, 1013–17 (5th Cir. 1984) (en banc) (applying *Pickering* as affected by *Connick*). *See Brinkmeyer v. Thrall Independent School District,* 786 F.2d 1291, 1294 (5th Cir.1986) (two step analysis under First Amendment after *Connick:* 1) determine if speech touched upon matter of public concern; and 2) balance interests of parties to determine if discharge is justified). The Court must balance the "interest of the public employee, as citizen, in commenting upon matters of public concern, against that of the state, as his employer, in promoting employee efficiency in public service." *Id.* at 1013. Because it is the defendant's burden to justify the discharge at this point, *Connick,* 461 U.S. at 149–50, 103 S.Ct. at 1691; *Gonzalez,* 774 F.2d at 1302, the facts are in dispute, and the defendants have not briefed the application of the balancing

---

**4.** Plaintiffs must also show that their protected conduct was a substantial or motivating factor in the defendants' decisions to take the allegedly retaliatory acts. *See Mt. Healthy City Board of*

*Education,* 429 U.S. at 287, 97 S.Ct. at 576. The parties contest this facts issue and the Court will not resolve it on summary judgment.

test, the Court must deny defendants' motion on the First Amendment claim.

### III. § 1985

Plaintiffs allege that defendants conspired to obstruct justice in a federal court by threatening and intimidating plaintiffs and other potential witnesses in violation of 42 U.S.C. § 1985(2). Plaintiffs state in affidavits, for example, that defendants have reduced various plaintiffs' pay and selectively reprimanded them because they filed this suit. Such allegations are clearly sufficient to state a cause of action under § 1985(2). *See Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *Bradt v. Smith*, 634 F.2d 796 (5th Cir.), *cert. denied*, 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106 (1981).

### IV. Qualified Immunity

Defendant Morris asserts qualified immunity pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under *Harlow*, defendant is immuned from suit if he is acting within the scope of his discretionary authority and does not violate clearly established law of which a reasonable person would have known. *Id.* *See also Mitchell v. Forsyth*, — U.S. ——, —— – ——, 105 S.Ct. 2806, 86 L.Ed.2d 411, 424–25 (1985); *Elliott v. Perez*, 751 F.2d 1472, 1477 (5th Cir.1985). Plaintiffs claims of retaliation and intimidation under § 1983 and § 1985 state violations of clearly established law; therefore, defendant Morris is not immune from suit.

### V. Conclusion

In summary, the Court GRANTS in part defendants' motion for summary judgment as follows:

1. Plaintiffs' FLSA claims are DISMISSED; and

2. plaintiffs' § 1983 claim for violation of the FLSA, due process, and equal protection are DISMISSED.

The Court DENIES defendants' motion insofar as it concerns plaintiffs' § 1983 First Amendment claim and plaintiffs' § 1985 action.

The Court further ORDERS that the Clerk send a certified copy of this order to the Office of the United States Attorney General, Main Justice Bldg. 10th and Constitution Avenue N.W., Washington, D.C. 20530.