**Melinda Anne EAST, an individual, for herself and others similarly situated, Plaintiff,**

**v.**

**BULLOCK'S INC., a Delaware corporation, dba Macy's/Bullock's and Federated Department Stores, Inc., a foreign corporation, Defendants.**

**No. 96–1251–PHX–SMM(DAE).**

United States District Court, D. Arizona.

Dec. 2, 1998.

William Porter Allen, Donald Charles Zavala, Jr., Snell & Wilmer LLP, Phoenix, AZ,

for Melinda Anne East, an individual, for herself and others similarly situated, plaintiff.

Thomas Edward Hill, Scott Lee Gardner, Thelen Reid & Priest LLP, Los Angeles, CA, for Bullock's Inc, a Delaware corporation dba Macy's Bullock's, defendant.

Scott Lee Gardner, Thelen Reid & Priest LLP, Los Angeles, CA, for Federated Department Stores, Inc., a foreign corporation, defendant.

*ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DECLARING PLAINTIFF'S MOTION TO STRIKE MOOT*

EZRA, District Judge.

The court heard Plaintiff's and Defendants' Motions on November 9, 1998. William P. Allen, Esq., and Don Zavala, Esq., appeared at the hearing on behalf of Plaintiff; Tom Hill, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motions and the supporting and opposing memoranda, the court DENIES Plaintiff's Motion for Partial Summary Judgment; GRANTS Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment; and DECLARES Plaintiff's Motion to Strike Moot.

*BACKGROUND*

This is an employment dispute in which Plaintiff Melinda Anne East ("Plaintiff") alleges various statutory and common law violations against her former employer, Bullock's, Inc., and Federated Department Stores, Inc. (collectively "Bullock's"). Bullock's is owned and operated by Federated Department Stores.

Plaintiff was employed at the Bullock's department store in Scottsdale, Arizona from July 10, 1991 until she was terminated on March 29, 1995. During the course of Plaintiff's employment, she worked in various positions. Initially, Plaintiff was hired as a sales associate and paid on an hourly basis. In April of 1992, Plaintiff was promoted to Manager of the Young Men's department and reclassified as a salaried employee. From February of 1993 through May of 1993, Plaintiff worked as a Merchandise Trainer and was again paid hourly. In May of 1993, she was named Manager of the Children's department and paid on a salaried basis. In December of 1993, Plaintiff became an Assistant Manager in the Designer Ladies Dresses' department and paid hourly. Thereafter, Plaintiff assumed the position of Selling Manager in the Mens' Polo department on a salaried basis. In November of 1994, Bullock's redefined the position of Selling Manager and, although Plaintiff retained the same title, she was reclassified as an hourly employee. Plaintiff continued in this capacity until her March 1995 termination.

On October 30, 1994, Kerry McBay, the Human Resources Manager at Bullock's Scottsdale store, met with Plaintiff to discuss problems relating to Plaintiff's timekeeping. Plaintiff had neglected to "clock in" and "clock out" on a regular basis as required by Bullock's Rules of Conduct.

Sometime in early 1995, another manager at the Scottsdale store reported that Plaintiff was making additions or corrections to her time records after the fact, rather than on a real time basis. Thereafter, Bullock's Security department placed Plaintiff under surveillance. Video cameras recorded Plaintiff's entrances and exits. On several occasions, between March 15, 1995 and March 25, 1995, Plaintiff's time records failed to match the times when she was observed entering and exiting the store.

On March 28, 1995, Security Chief Dale Lindgren interviewed Plaintiff. When queried about the time discrepancies, Plaintiff denied intentionally misrepresenting her hours. She apologized if she had made any inadvertent errors. Plaintiff stated that her failure to punch in and out could be attributed to her frequent reclassification from hourly to salaried. Salaried employees are not required to record their time.

After Plaintiff's interview, she was suspended by Mr. McBay. Mr. McBay then sought direction from Denise Flynn, Bullock's Vice President of Human Resources. Ms. Flynn instructed Mr. McBay to terminate Plaintiff. Plaintiff was terminated on March 29, 1995.

At the time of Plaintiff's termination, Ms. Flynn called Jill Lansdale, the Scottsdale store manager, and advised her of Plaintiff's termination. Ms. Lansdale informed the senior managers in the store that Plaintiff had been terminated for falsifying company documents.

Based on the foregoing events, Plaintiff filed the instant action, alleging violations of the Fair Labor Standards Act, breach of contract, defamation, and violation of Arizona's statutory wage laws. After the parties engaged in discovery, Plaintiff filed a Motion for Partial Summary Judgment. Bullock's likewise filed a Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment. Also before the court is Plaintiff's Motion to Strike Evidence Relating to Non–Existent Videotape and Documentary Evidence.

## STANDARD OF REVIEW

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

### I. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's motion seeks summary judgment as to Count 1 (Violation of FLSA), Count 3 (Defamation) and Count 4 (Violation of Arizona's statutory wage law) of Plaintiff's Amended Complaint.

*I.A. FLSA Violation*

Plaintiff alleges that she was improperly classified as a salaried "executive" employee. Such employees are exempt from the Federal Labor Standards Act's ("FLSA") overtime pay requirements. Plaintiff also alleges that Bullock's violated FLSA's recordkeeping requirements.

*I.A. 1. Classification of Exempt Employees*

FLSA generally requires employers to pay overtime to employees who work more than 40 hours per week. 29 U.S.C. § 207. The overtime rate is calculated as not less than one and one-half times the regular rate of pay. *Id.* Certain types of employees are exempt from the overtime requirement. An exempt employee is one who is "employed in a bona fide executive, administrative, or professional capacity...." 29 U.S.C. § 213(a)(1). The administrative regulations promulgated pursuant to FLSA establish both a duties test and a salary basis test for determining whether an employee is employed in a bona fide executive, administrative, or professional capacity. *See* 29 C.F.R. § 541.118; 29 C.F.R. § 541.103.

*I.A. 1.a. Duties Test*

The Department of Labor's regulatory duties test for an executive earning more than $250 per week requires that the employee 1) have management as her primary duty; 2) be in charge of a customarily recognized subdivision of the business; and 3) regularly direct the work of two or more full-time employees. 29 C.F.R. § 541.1(f). "Management" is defined to include the hiring and training of employees, setting their hours and pay rates, directing their work, determining the merchandise to be bought, stocked and sold, and other work necessary to manage the department. 29 C.F.R. § 541.102.

A determination of whether an employee has management as her primary duty must be based on all the facts in the case. 29 C.F.R. § 541.103. While the general rule of thumb is that primary duty means the major part, or over 50 percent of the employee's time, time alone is not the sole test. *Id.* Other factors to consider include the relative importance of the managerial duties as compared to the employee's other duties, the

frequency with which the employee exercises discretionary powers, her relative freedom from supervision, and the relationship between her salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. *Id.*

As an example, the Department of Labor's regulation cites the case of an employee who has broad responsibilities similar to those of the owner or manager of the establishment, but who generally spends more than 50 percent of her time in production or sales work. 29 C.F.R. § 541.103. While engaged in such work she supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. *Id.* The regulation states that she will be considered to have management as her primary duty. *Id.*

During the course of her employment, Plaintiff held exempt positions three different times. From April 1992 until February 1993, she was manager of the Young Men's department. From May of 1993 through December of 1993, Plaintiff managed the Children's department. In Plaintiff's deposition, she stated that while she was classified as an exempt manager during these two periods, she only spent 2% of her time selling merchandise. She further testified that while she was manager of the Young Men's and the Children's departments, she would "merchandise the floor, set up sales, supervise the employees, train them, help the customers if [she] needed to." She also said that, with the help of human resources, she had the power and authority to discipline the employees under her supervision.

Plaintiff held a third exempt position from April 1994 through October 1994 as the selling manager of the Men's Polo department. During her time as the Polo manager, she was responsible for selling "probably half the time." She estimated that she spent at least 20% of her time managing other employees and the other 30% was spent "[m]erchandising, markdowns, moving the floor around, talking to buyers." As manager of the Polo

department, Plaintiff stated that she had the authority to discipline employees.

At the end of October 1994, Bullock's changed the classification of the selling manager position from exempt to non-exempt. In response to the reclassification, Plaintiff's compensation changed. As a non-exempt selling manager, Plaintiff received a percentage of the department's sales, in addition to her now-hourly rate. At times, this maintenance fee caused her to earn more weekly than she did as an exempt salaried employee. At other times, she earned less.

■ Considering all of the facts, the court finds that, while classified as an exempt employee, Plaintiff's primary duty was management. In all three cases, she stated that at least 50 percent of her time was spent supervising and training employees, helping customers, talking to buyers, etc. These activities meet the Department of Labor's "management" definition. Therefore, the court finds that, based on Plaintiff's duties, she was properly classified as an exempt employee.

*I.A. 1.b. Salary Test*

In order to be exempt from the FLSA overtime requirements, an employee must meet both the duties test and the salary basis test. If an employee's salary is subject to certain deductions, it does not meet the salary basis test. 29 C.F.R. § 541.118. Prohibited deductions include those for absences caused by jury duty, attendance as a witness, and temporary military leave. *Id.* at (a)(4).

■ Bullock's Human Resources Manual provides that 1) pay may be deducted for part-day absences due to sickness; 2) jury duty is either unpaid or only paid for a limited amount of time; 3) absences for attendance as a witness are unpaid; 4) temporary military leave is unpaid after an initial two weeks. Bullock's personnel testified in depositions that the policies set forth in the Human Resources Manual apply to all employees, including managers.

Plaintiff argues that because she was "subject to" the deductions listed in the Human Resources Manual, she was not properly classified as a salaried employee. However, during her employment at Bullock's, Plaintiff never suffered improper deductions from her pay. She stated in her deposition that she was paid for her jury duty absence and her part-day absences. Moreover, none of the other deposed employees stated that they suffered improper deductions. In fact, Plaintiff presented no evidence that *any* Bullock's employee suffered from an improper deduction.

In *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997), the Supreme Court upheld the Secretary of Labor's interpretation that the salary-basis test is not met when employees are covered by a policy that permits disciplinary or other deductions in pay "as a practical matter." That standard is met if there is either an actual practice of making such deductions or an employment policy that creates a "significant likelihood" of such deductions. *Id.*

Both the law and the facts of *Auer* apply to this case. The petitioners in *Auer* sought overtime pay under FLSA, arguing that their classification violated the salary basis test. *Id.* The petitioners argued that the police manual, which nominally covered all employees, included provisions allowing disciplinary deductions in pay. *Id.* The Court found that this was not enough to render the petitioners' pay "subject to" improper deductions within the salary-basis test. *Id.* Moreover, the court reasoned that because the provisions applied to both petitioners and employees who were unquestionably not paid on a salary basis, no clear inference could be drawn as to the likelihood of a deduction being applied to the petitioners. *Auer,* 117 S.Ct. at 911–12; *see also Stanley v. City of Tracy,* 120 F.3d 179 (9th Cir.1997) (deductions that nominally applied to salaried employees did not destroy salary basis of their compensation because there were no actual deductions and no significant likelihood that deductions would be made).

In this case, the parties agree that no actual deductions were taken from Plaintiff's pay. Nor has any evidence been proffered to establish that improper deductions were made from any salaried employee's pay. Therefore, the court finds that there was no significant likelihood of improper deductions.

Because Plaintiff's classification as an exempt employee met both the duties test and

the salary basis test, Plaintiff's motion for summary judgment with respect to FLSA is DENIED.

*I.A. 2. Recordkeeping Requirements*

█ FLSA requires employers to maintain records showing the "hours worked each workday" during each seven day workweek for three years. 29 C.F.R. §§ 516.2(7), 516.5(a) Bullock's does not dispute that, by failing to retain the specified records, it violated the recordkeeping requirement. In its defense, however, Bullock's argues that FLSA does not provide a private right of action for recordkeeping violations. Bullock's further argues that only the Secretary of Labor has standing to enforce FLSA's recordkeeping requirements.

Plaintiff argues that to hold that no private right of action exists would be contrary to the Supreme Court's directive in *Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959), that FLSA be liberally construed, and contrary to Congress' intent that employers keep all records necessary for employees to assert their rights under FLSA. Moreover, citing *Biggs v. Wilson,* 1 F.3d 1537 (9th Cir.1993), *cert. denied,* 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 94 (1994), Plaintiff contends that the court has the power to grant declaratory relief.

There are three main vehicles for enforcing the provisions of FLSA. First, under § 216(b), an employee may sue an employer for unpaid minimum or overtime wages. Second, the Secretary of Labor may sue under § 216(c) to recover an employee's unpaid minimum or overtime wages. Finally, the Secretary of Labor is authorized under § 217 to obtain an injunction against an employer for violations of § 215. § 215(a)(5) declares a violation of § 211(c) and § 211(d) to be unlawful. 29 U.S.C. § 211(c) contains FLSA's recordkeeping requirement. § 211(d) empowers the Secretary of Labor to make regulations prohibiting industrial homework. Industrial homework is defined as the production by an employee, in a residential establishment, of goods for an employer. 29 C.F.R. § 530.1(d).

Although the Ninth Circuit has not addressed the issue of implied remedies in the FLSA context, other courts have. In *Bu-reerong v. Uvawas,* 922 F.Supp. 1450, 1471 (C.D.Cal.1996), the court held that "[n]either FLSA nor the regulations implementing it expressly create a private right of action to enforce § 215(a)(5) or regulations promulgated by the Secretary of Labor." Thus, Plaintiff's claim turns on whether an implied private right to sue for violations of § 215(a)(5) exists.

In determining whether a federal statute contains an implied right of action, a court must apply the four-factor test established by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *Stupy v. United States Postal Service,* 951 F.2d 1079, 1081 (9th Cir.1991). As identified by the Ninth Circuit in *Stupy,* the *Cort* factors are as follows: 1) the plaintiff must belong to the class for whose especial benefit the statute was created; 2) the legislature must have shown an intent, either explicitly or implicitly, to create a private remedy; 3) finding an implied cause of action must be consistent with the underlying purposes of the statute; and 4) the cause of action must not be one that has traditionally been left to state law. *Stupy,* 951 F.2d at 1081.

Of the four factors, the most important by far is Congressional intent. *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 91, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) ("the ultimate question ... is whether Congress intended to create the private remedy"). Because this issue is ultimately a question of statutory construction, "it is appropriate to begin with the language of the statute itself." *Id.* at 91, 101 S.Ct. 1571.

As stated by the Supreme Court, "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19–20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (quoting *Botany Worsted Mills v. United States,* 278 U.S. 282, 289, 49 S.Ct. 129, 73 L.Ed. 379 (1929)). The legislative history behind FLSA and § 215(a)(5) is silent on whether private litigants can sue to enforce regulations promulgated by the Sec-

retary of Labor. *Bureerong,* 922 F.Supp. at 1472. Additionally, the only federal cases after *Cort* to address the question of whether a private right of action exists under § 215(a)(5) have found that no such right exists. *Id.; Castillo v. Givens,* 704 F.2d 181, 198 (5th Cir.), *cert. denied,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983); *O'Quinn v. Chambers County, Texas,* 636 F.Supp. 1388, 1392 (S.D.Tex.1986), *amended on other grounds,* 650 F.Supp. 25 (S.D.Tex.1986); *Marchak v. Observer Publications, Inc.,* 493 F.Supp. 278, 281 (D.R.I.1980) (private right of action under section 16(b) of FLSA does not encompass failure to keep records). Thus, there is no evidence that Congress intended to create a private right of action to enforce § 215(a)(5). Indeed, given the existence of other private rights of action under FLSA, it appears that Congress did not intent to provide a private right to enforce § 215(a)(5) *Bureerong,* 922 F.Supp. at 1473.

Because evidence of Congressional intent is the "dispositive" issue, the court need not address the other *Cort* factors. *Stupy,* 951 F.2d at 1081. Finding no evidence of Congressional intent to create a private right of action to enforce § 215(a)(5), the court will not imply one. Therefore, Plaintiff's motion for summary judgment with respect to Bullock's recordkeeping violations is DENIED.

## I.B. Defamation

█ Count 3 of Plaintiff's Amended Complaint alleges defamation. Plaintiff argues that Ms. Lansdale, Bullock's vice president of human relations, made statements to other managers that Plaintiff was terminated for falsifying company documents. Plaintiff attempts to characterize her termination as one for timekeeping theft and makes much of the fact that accusations of theft are per se defamatory. However, Plaintiff has not proffered any evidence that Ms. Lansdale said anything about theft.

Moreover, Plaintiff's defamation claim fails because Ms. Lansdale's statements were true, that is, Plaintiff was actually terminated for falsifying company documents, namely, her time records. Although Ms. Lansdale did not independently investigate the grounds for Plaintiff's termination, she did not recklessly or negligently disregard the truth.

█ Finally, even if Ms. Lansdale's statements were not true, the statements were made in a meeting with other store managers. Bullock's argues that such statements fall within a qualified privilege under Arizona law. The Arizona Supreme Court recognized, in *Green Acres Trust v. London,* 141 Ariz. 609, 688 P.2d 617, 624 (1984), a two-part test for determining whether a qualified privilege exists. First, the court must examine the circumstances to determine whether a privileged occasion arose. Second, once a conditional privilege applies, a plaintiff must prove the privilege was abused by proving actual malice or by demonstrating excessive publication. Abuse through "actual malice" occurs when the defendant makes a statement knowing its falsity or actually entertaining doubts about its truth. *Id.* Abuse through excessive publication results from publication to an unprivileged recipient not reasonably necessary to protect the interest upon which the privilege is grounded. *Id.* Although the second part of the test is usually a question of fact for the jury, the court may decide the issue if there is no evidence of malice or excessive publication.

█ In this case, Ms. Lansdale's publication of Plaintiff's termination to other managers is entitled to a qualified privilege based on "common interest." Occasions in which "one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them," warrant a qualified privilege. *Green Acres Trust,* 688 P.2d at 625. Co-managers in a company would have a common interest in learning of an employee's termination. Furthermore, because there is no evidence of actual malice or excessive publication, the court finds that the conditional privilege has not been abused.

Therefore, Plaintiff's motion for summary judgment as to the defamation claim is DENIED.

## I.C. Arizona's Statutory Wage Laws

█ Count 4 of Plaintiff's Amended Complaint alleges violations of Arizona's statutory wage laws, A.R.S. § 23–350, et seq. Plaintiff alleges that Bullock's failed to pay her for all the hours that she worked. In support,

Plaintiff cites 28 examples of occasions when she was paid for less than the full time she worked. Of these, Bullock's correctly points out that three of Plaintiff's examples were merely mathematical errors on her part and that, in a fourth instance, she was actually paid overtime for the allegedly-unpaid time. The other 24 occasions involve time differences of less than 15 minutes.

With respect to these occasions, Bullock's argues that its time clock rounds all time entries in accordance with 29 C.F.R. § 785.48(b). Under this subsection, starting and stopping time may be recorded to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. The presumption underlying § 785.48(b) is that this arrangement averages out so that employees are fully compensated for all the time they actually work. Rounding is acceptable, provided "that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48.

During the same time period in which Plaintiff was "underpaid," her payroll records shows that she was also "overpaid." The evidence shows that Bullock's rounding system may not credit employees for all the time actually worked, but it also credits employees for time not actually worked. Therefore, the court concludes that Bullock's rounding practices average out sufficiently to comply with § 785.48(b).

Plaintiff argues that Bullock's has not demonstrated any "industrial reality" to justify its rounding policy. However, Plaintiff fails to recognize that while 29 C.F.R. § 785.47 requires "industrial realities" before an employer may disregard insubstantial or insignificant periods of time, § 785.48(b) is completely separate and contains no similar requirement. Thus, Bullock's need not justify its rounding practice in the manner suggested by Plaintiff.

Plaintiff next argues that, even if Bullock's rounding policies comport with FLSA, FLSA does not preempt Arizona's law. While Plaintiff is correct, there is no Arizona case law that disapproves of the federal rounding regulations or suggests that these regulations are inconsistent with the policies underlying the Arizona wage laws. Therefore, it is reasonable for the court to construe the requirements of the Arizona wage law in a manner consistent with FLSA. To hold otherwise would preclude Arizona employers from adopting and maintaining rounding practices that are available to employers throughout the rest of the United States.

Because the court finds that Plaintiff was compensated within the guidelines of 29 C.F.R. § 785.48(b) and the requirements of A.R.S. § 23–350 et seq., Plaintiff's motion for summary judgment on Count 4 is DENIED.

## II. Defendant's Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment

Bullock's seeks summary judgment on all 4 counts of Plaintiff's Amended Complaint. The court addresses each in turn.

### II.A. FLSA Violation

As discussed thoroughly in Section I.A, Bullock's classification of Plaintiff as an exempt employee met both the duties and salary basis tests. Furthermore, no private cause of action exists for recordkeeping violations. Therefore, Defendant's motion for summary judgment as to Count 1 of Plaintiff's Amended Complaint is GRANTED.

### II.B. Breach of Contract

Count 2 of Plaintiff's Amended Complaint alleges breach of contract and breach of the covenant of good faith and fair dealing. Plaintiff contends that Bullock's breached its contract with her by terminating her without good cause.

Before Plaintiff was hired, she filled out and signed an employment application on May 6, 1991 in which she stated that she understood and agreed that her employment was "at will." The application specifically stated that:

> nothing contained in any Bullock's handbook, manual, rules or regulations, practice, policy, etc. shall be deemed to create an employment contract between myself and Bullock's. It is further understood and agreed that my employment relationship may be terminated on any day by

myself or Bullock's for any reason, or no reason, without liability. . . .

Upon her hire, Plaintiff received the Bullock's Rules of Conduct. Rule 2 states that violation of the rules regarding timekeeping may subject an employee to immediate discharge without warning. The relevant portion of Rule 2 reads as follows:

> Any falsification of documents or time records with or without the intent of deriving personal gain, or being an accessory to such falsification.

At her orientation, Plaintiff also received a Bullock's employee handbook. She signed an acknowledgment form indicating that she understood that the:

> statements of Personnel policy included in this handbook are guidelines only. They do not constitute an implied or express contract. I further understand that I am an employee at will and my employment can be terminated at any time, with or without good cause, by me or Bullock's.

In 1994, Bullock's issued a revised handbook which stated that the guidelines contained therein were intended to "supersede and invalidate any stated in prior handbooks, policies or other manuals." The new handbook contained the same "at will" disclaimer signed previously by Plaintiff. Although Plaintiff did not sign the disclaimer in the revised handbook, she admits that she received the handbook.

The only other document on which Plaintiff relies is Bullock's Policies and Procedures Manual ("P & P manual"). This manual was not distributed to employees. The P & P manual contained provisions regarding progressive discipline policies, including one which stated:

> When appropriate, Macy's/Bullock's uses a system of progressive discipline to provide employees with notice of concerns about their conduct or performance. Progressive discipline may involve verbal counseling and/or one or more written warnings before an employee is terminated. However, engaging in actions which, in the opinion of management, are detrimental to the orderly conduct and integrity of the business may result in disciplinary action including immediate termination, based on the seriousness or repetition of the action.

Essentially, Plaintiff argues that she was not an "at will" employee because 1) she did not sign the latest "at will" acknowledgment; 2) the "at will" language contained in the handbook was not sufficiently conspicuous to govern her employment; 3) the P & P manual created an implied-in-fact contract whereby she could only be terminated for good cause; 4) the severance agreement she was offered when the Scottsdale store decided to close modified her employment contract; and 5) Bullock's violated the covenant of good faith and fair dealing by failing to provide Plaintiff with a right to go through a four-step disciplinary process. As discussed below, each of these arguments fails.

█ First, Plaintiff admits that she received a copy of the revised employee handbook and understood its term to apply to her. Therefore, Plaintiff's failure to sign the identical "at will" acknowledgment did not alter her "at will" status.

█ Second, Plaintiff relies on *Loffa v. Intel Corporation*, 153 Ariz. 539, 738 P.2d 1146 (Ct.App.1987), for her argument that the "at will" acknowledgment was not "clear and conspicuous" as required by Arizona law. However, *Loffa* is distinguishable because, unlike here, the "at will" language was contained in a separate document executed years earlier. In this case, the "at will" language is prominently displayed on the back page of Bullock's handbook and not in a separate document. Therefore, the court finds that Bullock's "at will" disclaimer meets the "clear and conspicuous" test.

Plaintiff's third argument is that the progressive discipline provisions found in the P & P manual created an implied-in-fact employment contract. In *Leikvold v. Valley View Community Hospital*, 141 Ariz. 544, 688 P.2d 170, 174 (1984), the Arizona Supreme Court recognized that personnel manuals can become part of employment contracts. Therefore, the court noted that employers are free "to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason. Such actions, either not

issuing a personnel manual or issuing one with clear language of limitation, instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual." *Id.*

The Arizona Supreme Court determined that while the question of whether the policy manual forms part of the employment contract is one of fact for the jury, where the terms of the agreement are clear and unambiguous, the construction of the contract is a question of law for the court. *Id.* Bullock's "at will" acknowledgment is exactly like that described in *Leikvold* in that it clearly indicates to employees that the handbook is not part of their employment contract and that their jobs are terminable at will. Furthermore, even assuming that the employee handbook at issue in this case and/or the P & P manual did become part of Plaintiff's employment contract, the terms contained in these documents are also clear and unambiguous. While Bullock's favored a policy of progressive discipline, this policy also stated that certain actions could result in immediate termination. Among these were violations of Bullock's Rules of Conduct number 2, intentionally or unintentionally falsifying time records. Therefore, the court finds that, given that Bullock's "at will" language precludes an employee's reasonable expectations of job security and reasonable reliance on the representations in the handbook, no implied-in-fact contract was created by Bullock's issuance of its employee handbook.

Fourth, Plaintiff argues that the severance agreement offered to her modified her "at will" employment. However, because the agreement did not contain a good cause provision, or otherwise explicitly alter Plaintiff's "at will" status, and because Plaintiff never signed the agreement, the court concludes that the severance agreement did not modify Plaintiff's "at will" status.

Fifth, Plaintiff claims Bullock's breached the implied covenant of good faith and fair dealing. The Arizona Supreme Court recognizes the implied covenant in "at will" employment contracts. *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 710 P.2d 1025, 1036 (Ariz.1985). The covenant of good faith does not require employers to discharge only for good cause, but it does protect the employee's claim to benefits to which she is entitled under the parties' agreement. In *Wagenseller*, the court found that a plaintiff "has a right to receive the benefits that were a part of her employment agreement with [the] defendant. . . ."

Plaintiff alleges that Bullock's denied her the right to certain benefits, such as the progressive disciplinary process. Bullock's contends that it had no duty to provide her these benefits because the P & P manual, employment application, employee handbook, Rules of Conduct, severance agreement and Bullock's course of conduct unequivocally support Bullock's position that the parties never agreed to provide Plaintiff with a right to go through a progressive disciplinary process prior to termination. The court agrees. Therefore, Bullock's motion for summary judgment as to Count 2 is GRANTED.

### II.C. Defamation

Pursuant to the court's reasoning in Section II.B of this order, Defendant's motion for summary judgment as to Count 3 is GRANTED.

### II.D. Arizona's Statutory Wage Laws

As fully discussed above, the court holds that Bullock's did not violate Arizona's statutory wage laws. Therefore, Bullock's motion for summary judgment is GRANTED.

### III. Plaintiff's Motion to Strike

Based on the court's conclusion that Plaintiff was an at-will employee, Bullock's need not demonstrate that she was terminated for good cause. Therefore, Plaintiff's Motion to Strike is moot.

### CONCLUSION

For the reasons stated above, the court DENIES Plaintiff's Motion for Partial Summary Judgment; GRANTS Defendant's Motion for Summary Judgment; and DECLARES Plaintiff's Motion to Strike moot.

IT IS SO ORDERED.